387 A.2d 824

COMMONWEALTH of Pennsylvania

v.

Wesley Leon HARPER, Appellant (two cases).

Supreme Court of Pennsylvania.

Argued April 19, 1977.

Decided June 2, 1978.

44

Neil E. Jokelson, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Marianne Cox, Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

On November 21, 1973, appellant, Wesley Leon Harper, was tried by a judge and jury and found guilty of murder of the first degree, burglary, and two counts of robbery. The above convictions resulted from the October 29, 1969, robbery of a Philadelphia National Bank office in Northeast Philadelphia and the shooting death of bank guard George Bordner during the burglary and robbery. Post-verdict motions were denied on July 31, 1975. Appellant was sentenced to life imprisonment for the murder of the first degree conviction and concurrent ten-to-twenty year sentences on each of the robbery and burglary convictions. Appellant appealed the murder conviction to this court and

the robbery-burglary convictions to the Superior Court, which certified that appeal to this court.

The facts surrounding the homicide-robbery are as follows. Appellant and Benjamin McElveen entered a branch office of the Philadelphia National Bank in Northeast Philadelphia on October 29, 1969. Upon entering the bank, appellant pulled out a gun and yelled: "This is a holdup, lie down on the floor." McElveen then approached the tellers' cages and demanded that the tellers fill an attache case with money. As appellant proceeded toward the office area, the decedent, George Bordner, rose from his chair. Upon seeing the bank guard, appellant fired three shots. As a result of these gunshot wounds, George Bordner died.

McElveen and appellant left the bank with $8,095, $400 of which was marked for identification. On November 2, 1969, appellant was arrested in Tampa, Florida, by the F.B.I. pursuant to a fugitive warrant. On November 27, 1969, he was identified by an employee of the bank as the person who shot the decedent. This identification was confirmed at trial.

We have a statutorily imposed duty to review the evidence in all judgments of sentence for murder of the first degree to determine if there exists on the record sufficient evidence to sustain such a conviction. Act of February 15, 1870, P.L. 15, § 2, 19 P.S. § 1187. Exercising this duty, our review of the record clearly reveals sufficient evidence to sustain appellant's conviction of murder of the first degree.

Appellant first argues that he was not competent to stand trial. We do not agree. In *Commonwealth v. Kennedy*, 451 Pa. 483, 487–88, 305 A.2d 890, 892 (1973), this court stated:

"In *Commonwealth ex rel Hilberry v. Maroney*, 424 Pa. 493, 227 A.2d 159 (1967), we pertinently stated the following with respect to what the defendant must establish: '[T]he test to be applied in determining the legal sufficiency of his mental capacity to stand trial, or enter a plea at the time involved, is not the M'Naghten "right of wrong" test, but rather his ability to comprehend his position as one accused of murder and to cooperate with his counsel,

*in making a rational defense.* See *Commonwealth v. Moon,* [383 Pa. 18, 117 A.2d 96 (1955)], and *Commonwealth ex rel. Hilberry v. Maroney,* supra, 451 Pa. at 544, 227 A.2d 159. Or stated another way, did he have sufficient ability at the pertinent time to consult with his lawyers with a reasonable degree of rational understanding, and have a rational as well as factual understanding of the proceedings against him. See *Dusky v. United States,* 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960). Otherwise, the proceedings would lack due process: *Bishop v. United States,* 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835 (1956).' Id. 451 Pa. at 495, 227 A.2d at 160. See also *Commonwealth v. Harris,* 431 Pa. 114, 243 A.2d 408 (1968)." (Emphasis added.)

Appellant's allegation of error is two-pronged. He initially argues that the court below erred in February, 1972, in determining that he was competent to stand trial; and, secondly, he argues that the court below erred in not declaring him incompetent to stand trial in November, 1973. We will discuss these allegations separately.

██ Appellant contends that the court below erred in February, 1972, by finding him competent to stand trial. We do not agree. Initially, we must point out that the complained of competency determination was made approximately twenty months prior to appellant's trial and, therefore, would have little value in the determination of competency in 1973. Appellant did not file a pretrial motion in 1973 alleging incompetence to stand trial.

██ Applying the *Kennedy* standard, the February, 1972, record is sufficient to show that appellant could consult with his attorney and did understand the nature of the charges and the proceedings against him. At the competency hearing, Dr. Edward B. Guy testified on behalf of the Commonwealth. His testimony was clear that in his judgment appellant was competent to consult with his attorney and also that appellant knew and understood the nature of the charge and the proceedings. We find no error committed by the court below in the February, 1972 determination that appellant was competent.

■ Appellant's second attack on his competency to stand trial centers around an emotional outburst in an ante-room outside the presence of the jury during voir dire.

The court below ordered Dr. Polevoy, a physician, and Dr. Francis Hoffman, the chief psychiatrist for the Court of Common Pleas of Philadelphia, to examine appellant. Dr. Polevoy testified that no medical reasons existed for not continuing the trial. Dr. Hoffman testified that in his opinion appellant could assist counsel in his defense and that he knew and understood both the charges and the proceedings.

The above testimony meets the *Kennedy* standard; therefore, appellant's argument has no merit.

Appellant next argues that the court below erred in excluding the testimony of a defense psychiatrist. Appellant's offer of proof at trial was two-fold:

1. The psychiatrist would testify about appellant's mental condition and criminal culpability as it related to the American Law Institute's definition of insanity rather than this Court's requirement of the *M'Naghten* test for insanity.

■ 2. The psychiatrist's testimony concerning appellant's mental condition would show that appellant could not form the specific intent to kill necessary for murder of the first degree.[1]

■ Appellant asks this court to eliminate the *M'Naghten* rule for insanity and substitute the American Law Institute test for insanity. We have continuously refused to do so and once again decline.

■ Appellant's second allegation of error relates to the psychiatric testimony to negate the specific intent to kill necessary for a determination of murder of the first degree.

1. Appellant for the first time in this appeal attempts to expand the second prong of his offer of proof to include a lack of specific intent to commit the robbery and burglary, the underlying felonies to his conviction for murder. Appellant may not for the first time present this argument on appeal. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

48

The crime of which appellant was convicted occurred on October 29, 1969. The applicable statute relating to first degree murder was:

"All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which shall be committed in the perpetration of, or attempting to perpetrate any arson, rape, robbery, burglary, or kidnapping, shall be murder in the first degree. All other kinds of murder shall be murder in the second degree. . . ." Act of June 24, 1939, P.L. 872, § 701; December 1, 1959, P.L. 1621, § 1.

Under the above statute, murder of the first degree consisted of:

1. All murder which shall be perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing; or

2. which shall be committed in the perpetration of, or attempting to perpetrate any arson, rape, robbery, burglary, or kidnapping.

In *Commonwealth v. Walzack*, 468 Pa. 210, 360 A.2d 914 (1976), this court found that psychiatric evidence was relevant and admissible concerning the defendant's ability or lack of ability to form the specific intent to kill required by the Penal Code, *supra*, in nonfelony murder situations.

In the instant case, however, the Commonwealth's theory was felony-murder under the 1939 Penal Code and not the specific intent-to-kill theory of culpability. The court in its charge to the jury clearly eliminated the specific-intent theory from the jury's consideration.

The court stated:

"You will confine yourselves, ladies and gentlemen, in your determination of murder in the first degree to the definition of felony murder. If you find that the defendant entered the bank, robbed it, and in the perpetration of this robbery shot and killed Mr. Bordner, then you should

reconcile that with my definition of murder in the first degree as relates to felony murder. Have I made that clear to you?"

Appellant's offer of proof at trial was limited to psychiatric evidence that would negate specific intent. Under the facts of this case, the court below properly excluded the evidence as not being relevant or probative of the issues in the case.

Appellant next argues that the court below erred in his charge to the jury by imposing a "burden of proof" on appellant to prove insanity by a preponderance of the evidence.

The court below in its charge stated:

"Now, finally there is submitted to you testimony which purports to indicate the mental condition of this defendant at the time of this occurrence, and it is essential that the Court gives you certain guidance in regard to that. Now, ladies and gentlemen, there are certain defenses to criminal acts, and one is insanity.

"Now, the law in this Commonwealth is this. *In all crimes where the defense of insanity is set forth the defendant must show that the crime committed was the result of that insanity. Now, simply because I say the defendant must show that it doesn't mean that the burden of proving his guilt has shifted from the Commonwealth. Have I made that clear?* In other words, there must be some relation between the insanity or the insane delusions he may have and the crime he commits.

*"It is not enough to prove or to show to escape the consequences of his act that he has some mental infirmity, some disease of the mind. He must go further and show that this disease of the mind is such as to render him incapable of knowing what he was doing or if he did know what he was doing the disease of the mind made him unable to judge that what he did was wrong.*

"If the defendant labored under insanity but understood the nature of his act and then and there had knowledge that it was wrong and he'd receive punishment then he

50

would be responsible. Have I made that clear to you, ladies and gentlemen?

"In short, spells, fits, epileptic or otherwise, is not in this Commonwealth insanity or with more particularity, legally defensible insanity. Have I made that clear to you?" (Emphasis added.)

Previously in his charge to the jury the trial court clearly articulated that the burden of proof for all the elements of the crimes charged was on the Commonwealth beyond a reasonable doubt and that burden never shifted. The court en banc affirmed the trial judge's charge. At the time of appellant's trial, this court had not decided *Commonwealth v. Rose*, 457 Pa. 380, 321 A.2d 880 (1974) and *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974).

In *Rose* and *Demmitt*, this court established that the Commonwealth has the burden of proof beyond a reasonable doubt of all the elements of the crime charged, and the criminal defendant does not have the burden of proof by a preponderance of the evidence to establish the defenses of intoxication or insanity.

In *Commonwealth v. Moyer*, 466 Pa. 464, 353 A.2d 447 (1976), this court made clear that *Rose* and *Demmitt* were applicable to all cases on direct appeal where the defendant had properly preserved the issue.

In the usual course of events, appellant would be entitled to a new trial; however, under the facts of this case the trial court was not required to include an "insanity" charge in his *instructions to the jury.*

■ Before a criminal defendant is entitled to a charge on insanity:

". . . There must be evidence in the case from whatever source that he did not know the nature and quality of his act or that he did not know that it was wrong." *Demmitt, supra,* 456 Pa. at 483, 321 A.2d at 632.

The only evidence in the record dealing with "insanity" is appellant's testimony that he received treatment at a mental hospital within the previous three or four years and that he had "spells." There is also an indication from the record

that appellant's testimony was interrupted at times by pauses and certain erratic demeanor. This is insufficient to raise insanity as a defense. See *Commonwealth v. Brown*, 462 Pa. 578, 593, 342 A.2d 84 (1975).

 The court below did err in giving the "preponderance" charge to the jury concerning "insanity." Such error, however, is harmless beyond a reasonable doubt because the instant defendant was not entitled to the charge. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

Judgments of sentence affirmed.

ROBERTS, J., took no part in the consideration or decision of this case.

EAGAN, C. J., and POMEROY and NIX, JJ., concurred in the result.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice, dissenting.

I dissent. In this case the trial court incorrectly charged the jury that the appellant had the burden of proving his insanity by a preponderance of the evidence. The majority concludes this was harmless error because appellant was not entitled to an insanity charge. I disagree. Once the insanity of a defendant is put in issue from whatever source, a *proper* insanity charge should be given. *See, e.g., Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974).