425 A.2d 352

**COMMONWEALTH of Pennsylvania**

v.

**Bernard MURPHY, Appellant.**

Supreme Court of Pennsylvania.

Submitted Oct. 16, 1980.

Decided Jan. 30, 1981.

James J. Binns, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Asst. Dist. Atty., Franklin Hoel, Asst. Dist. Atty., for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION

NIX, Justice.

As a result of an incident which occurred in Philadelphia on October 3, 1977, appellant, Bernard Murphy, was tried and convicted for the shooting deaths of two victims and the aggravated assault of a third individual. He was sentenced on the murder convictions to concurrent terms of life imprisonment and a concurrent term of not less than five nor more than ten years for the aggravated assault bill of indictment. This is a direct appeal from these judgments of sentence.[1]

These shootings occurred in and about the premises of a State Liquor Store shortly after noontime. Appellant entered the store and stood in one of two lines waiting for service. When two other persons entered the store, one joined the line behind appellant and the other went to the rear of the second line. Appellant turned to the man who had taken the position immediately behind him and asked him where he was from and "what's your problem." When the person responded that he did not have a problem, appellant shot him and killed him. This person was identified as Basil Moore. Appellant then fired at the person standing at the end of the second line, striking him in the head. This victim, Eric Younger, recovered from his wounds and testified at trial against appellant. Appellant, after shooting Younger, left the store and on the sidewalk shot a third man who had been with Moore and Younger.

At trial appellant raised the defenses of insanity and justification. In support of the justification defense, appel-

1. 42 Pa.C.S.A. § 722(1).

lant contended that he had shot the three victims in defense of the life of his companion, Robinson. This version was corroborated by Robinson and several other defense witnesses who testified to certain threats made on the life of Robinson by a youth gang, of which the defense alleged the three victims were members.

The first assignment of error is that the trial court abused its discretion in denying a request for a bifurcated trial pursuant to the Mental Health Procedures Act, Act of July 9, 1976, P.L. 817, No. 143, § 404, 50 P.S. § 7404 (Supp. 1980–81). Section 404(c) provides:

> Bifurcation of Issues of Trial.—Upon trial, the court, in the interest of justice, may direct that the issue of criminal responsibility be heard and determined separately from the other issues in the case and, in a trial by jury, that the issue of criminal responsibility be submitted to a separate jury. Upon a request for bifurcation, the court shall consider the substantiality of the defense of lack of responsibility and its effect upon other defenses, and the probability of a fair trial.

By its terms the statute directs that the determination as to whether such a request should be granted should turn upon "the substantiality" of the insanity defense and its "effect upon other defenses." We would readily agree there would be serious question as to whether the fair trial standard of section 404(c) could be satisfied if one with a substantial insanity claim were forced to assert it before the same fact tribunal that was being called upon to assess an alternative claim of defense of another. The insanity defense is premised upon the contention that the actor did not know the nature and quality of the act or could not perceive the distinction between right and wrong. *Commonwealth v. Hicks*, 483 Pa. 305, 396 A.2d 1183 (1979); *Commonwealth v. Bruno*, 466 Pa. 245, 352 A.2d 40 (1976); *Commonwealth v. Demmitt*, 456 Pa. 475, 321 A.2d 627 (1974). The incompatibility with a defense of justification, such as defense of a

third party, is evident.[2] Thus the validity of this complaint must depend upon "the substantiality" of the insanity defense raised here.

■ The only evidence on the record at the time appellant requested a bifurcated trial related to his competency to stand trial. The test for competency to stand trial not only relates to the accused's mental state at the time proposed for trial and is therefore not necessarily relevant to his state of mind at the time of the occurrence, Mental Health Procedures Act, Act of July 9, 1976, P.L. 817, No. 143, § 402(a), 50 P.S. § 7402(a); *Commonwealth v. Harper*, 479 Pa. 42, 387 A.2d 824 (1978); *Commonwealth v. Kennedy*, 451 Pa. 483, 305 A.2d 890 (1973); *Commonwealth ex rel. Hilberry v. Maroney*, 424 Pa. 493, 227 A.2d 159 (1967); *Commonwealth v. Dimitris*, 247 Pa.Super. 486, 372 A.2d 930 (1977), it also uses a different standard than the one employed to determine criminal responsibility for the act. *Commonwealth v. Harper, supra; Commonwealth v. Kennedy, supra; Commonwealth ex rel. Hilberry v. Maroney, supra.*[3] Appellant, nevertheless, still argues that if the request had been granted a substantial issue as to his sanity at the time of the defense could have been raised. He did not at the time of the application, nor even in his brief in this appeal, suggest with specificity what additional evidence may have been available to support the defense. Thus based upon the information provided to the court, we cannot say the denial of the request constituted an abuse of discretion.

■ It is next charged that the trial court erred in permitting evidence of alleged criminal activity of appellant one and one-half hours before the charges for which he was being tried. Henry Pompey, a witness for the Common-

2. *See* 18 Pa.C.S. § 506; *see also, Commonwealth v. Brown*, 491 Pa. 507, 421 A.2d 660 (1980); *Commonwealth v. Jackson*, 467 Pa. 183, 355 A.2d 572 (1976).

3. At trial appellant offered the testimony of Dr. Sadoff, a psychiatrist, in support of the defense of insanity. Although he testified as to appellant's psychiatric difficulties, he stated that it was his medical opinion that appellant did possess the ability to distinguish between right and wrong at the time of the commission of the crime.

wealth, testified that one and one-half hours before the shootings he had met appellant not far from the liquor store. Appellant took a gun from under his coat and said, "let's have a shootout." The witness testified that he answered he did not wish to have a shootout and appellant walked away mumbling. Generally, evidence of a defendant's prior criminal activity is not admissible. *Commonwealth v. Sisco*, 484 Pa. 85, 398 A.2d 955 (1979); *Commonwealth v. Spruill*, 480 Pa. 601, 391 A.2d 1048 (1978); *Commonwealth v. Fortune*, 464 Pa. 367, 346 A.2d 783 (1975); *Commonwealth v. Foose*, 441 Pa. 173, 272 A.2d 452 (1971); *Commonwealth v. Wable*, 382 Pa. 80, 114 A.2d 334 (1955). However, evidence concerning a defendant's conduct at a time and place very close to the commission of the crimes for which he is charged is admissible if relevant to show a defendant's mental state when he committed the crimes with which he is charged. *Commonwealth v. Glover*, 446 Pa. 492, 286 A.2d 349 (1972); *Commonwealth v. Faison*, 437 Pa. 432, 264 A.2d 394 (1970); *Commonwealth v. Wable, supra.*

█ The defense of others is dependent upon the mental state of the actor. *Commonwealth v. Jackson*, 467 Pa. 183, 355 A.2d 572 (1976); *Commonwealth v. Brentley*, 267 Pa.Super. 20, 405 A.2d 1282 (1979). We are satisfied that this event was sufficiently proximate in time to be germane in determining appellant's state of mind at the time of the shootings. The jury could properly consider whether the aggressive and provocative behavior exhibited in the earlier event carried over to the time of the incident in question.[4]

█ The third complaint is that the defense was improperly restricted and too much latitude was given to the prosecu-

4. Appellant calls attention to the prosecution's reference to the earlier incident during the summation. The prosecutor recalled the testimony of Mr. Pompey as, "Let's have a shootout. I'm going to kill you." The statement "I'm going to kill you" was erroneously added. Whatever merit this argument may have, it is not now before this Court. Appellant did not object to this statement either during or at the close of the prosecutor's summation. Thus it has not been properly preserved for our review. *Commonwealth v. Jarvis*, 482 Pa. 598, 394 A.2d 483 (1978); *Commonwealth v. Brown*, 467 Pa. 512, 359 A.2d 393 (1976).

tion in cross-examination. Appellant also complains that he was denied the opportunity to present competent and exculpatory evidence. The latter complaint related to the evidence sought to be elicited from Detective Dougherty. Our review of the trial record satisfies us that the trial court properly limited the scope of cross-examination of both defense counsel and the prosecutor and also properly excluded the testimony of the police officer who took a statement from appellant shortly after his arrest.

The record shows appellant was not permitted to ask questions concerning statements the appellant may have made at the time of his arrest. Appellant argues he asked these questions to elicit testimony bearing on his sanity at the time of his arrest. However, these questions were beyond the scope of the direct examinations of the arresting officers. *Commonwealth v. Schmidt,* 437 Pa. 563, 263 A.2d 382 (1970); *Spiwak. v. Allegheny County,* 366 Pa. 145, 77 A.2d 97 (1950). If in the judgment of the defense these officers had non-hearsay testimony relevant to appellant's sanity, appellant was free to call those officers as his own witnesses. This course was not followed and the appellant will not now be heard to complain. *Commonwealth v. Nash,* 436 Pa. 519, 261 A.2d 314 (1970); *Commonwealth v. Brown,* 438 Pa. 52, 265 A.2d 101 (1970). The record also fails to support appellant's contention that the prosecutor was permitted to explore with defense witnesses the same type of questions defense counsel was barred from asking of the arresting officers. Both defense counsel and prosecutor were permitted to ask questions relating to appellant's demeanor and appearance on the morning of the killings. The sword was not single edge as construed by appellant, but rather double edge with equal sharpness on both sides of the blade.

The dispute surrounding the court's rejection of the defense's offer of appellant's statement made at the time of arrest is also without foundation. The defense called Detective Dougherty for the purpose of having him read into evidence statements made by appellant at the time of his

arrest. Where a defendant seeks at trial to introduce his own statements made at the time of arrest to support his version of the facts such testimony is clearly offensive to the hearsay rule. *Commonwealth v. Lippert*, 454 Pa. 381, 311 A.2d 586 (1973). Appellant suggests that this testimony may have been relevant and not hearsay as it reflected upon the state of mind of appellant at the time of the shootings. We agree that the evidence would not have been hearsay if it was offered to prove the fact that the statements were uttered and not for the truth of the assertions made therein. *Commonwealth v. Sampson*, 454 Pa. 215, 311 A.2d 624 (1973); *Commonwealth v. Jacobs*, 445 Pa. 364, 284 A.2d 717 (1971). The evidence would also have been relevant, if offered for this purpose, if it may have reflected upon the mental state of appellant at the time of the shootings. *Commonwealth v. England*, 474 Pa. 1, 375 A.2d 1292 (1977); *Commonwealth v. Wright*, 455 Pa. 480, 317 A.2d 271 (1974). A review of this record indicates that this testimony was not sought to be introduced to establish that those utterances had been made at the time of the arrest. Rather, it was offered to prove the truth of the statements made. In his brief appellant implicitly concedes that he sought the advantage of the exculpatory portions of the statement. Thus the court's conclusion that the testimony was hearsay was correct and it was not error to exclude the proffered testimony.

Appellant also claims that a new trial is required because he was not given the statement of an eyewitness, Mr. Brown, until mid-trial. This objection is meritless because the defense was provided with the information during the trial and there is no showing that its alleged belated disclosure in any way adversely affected appellant. Trial counsel made a request for all material in the Commonwealth's possession "which may in any way be exculpatory." The request was joined with an inquiry relating to the recovery of a gun which may have belonged to one of the decedents. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). On the fourth day of trial, after the Commonwealth had rested its case, trial counsel first learned

that a Mr. Salley was in the liquor store at the time of the incident and had in his possession a gun. During the course of the investigation the police became aware of this fact and apprehended this individual shortly after the incident.[5] After further investigation, the police were satisfied that Mr. Salley had no involvement in the shootings and released him. It is now argued that the prosecution's failure to promptly disclose this information constituted a *Brady* violation and entitles appellant to relief.

In *Brady* the United States Supreme Court held, "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady v. Maryland, supra* at 87, 83 S.Ct. at 1196. It is to be noted that in *Brady* the non-disclosed evidence was first discovered by the defense after the trial, conviction and sentencing. Thus the due process complaint in *Brady* was that the jury did not have the benefit of the evidence in assessing guilt or innocence and in determining the penalty.[6] Here the complaint is that the evidence was not disclosed prior to trial.

In further explication of its *Brady* holding, the Supreme Court has noted: "unless the omission deprived the defendant of a fair trial, there was no constitutional violation requiring the verdict be set aside; and absent a constitutional violation, there was no breach of the prosecutor's constitutional duty to disclose." *U. S. v. Agurs*, 427 U.S. 97, 108, 96

5. An eyewitness informed the police that he saw a man backing out of the store, drawing a handgun from a paper bag. The witness asked that individual "What is happening?" and the person responded, "I'm not doing the shooting. The S.O.B.'s in the State Store are doing it." The witness supplied the police with a description of the individual and the license number of the vehicle he drove away in. As a consequence, Mr. Salley was flagged down a few blocks away.

6. The *Brady* court affirmed the Circuit Court's ruling that due process required that the non-disclosed evidence in that case should have been before the jury for purposes of fixing the appropriate punishment but not for determining guilt or innocence. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

S.Ct. 2392, 2399, 49 L.Ed.2d 342 (1976). Moreover, in rejecting the contention that the standard should focus on the impact of the undisclosed evidence or the ability of the defendant to prepare for trial, that Court noted: ". . . it has always been the Court's view that the notice component of due process refers to the charge rather than the evidentiary support for the charge." *U. S. v. Agurs, supra* at 112 n. 20, 96 S.Ct. at 2401 n. 20.

Finally, it is to be noted that the *Brady* rule was not intended as a rule of discovery in criminal cases.

> There is no general constitutional right to discovery in a criminal case, and *Brady* did not create one; . . . 'the Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded. . .' *Wardius v. Oregon*, 412 U.S. 470, 474, 93 S.Ct. 2208, 2211, 37 L.Ed.2d 82 (1973).
>
> *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 845, 51 L.Ed.2d 30 (1977).

The parties in this instance have focused upon the question of the materiality of the evidence and the nature of the request made by the appellant. For purposes of the instant decision, we need not consider these questions. This is not a situation where the withheld information was discovered only after conviction, but one where the evidence became available to the defense during trial. Moreover, the defense had the opportunity to effectively present this evidence before the jury. Under these circumstances, we find no justification for granting a new trial. The rationale for doing so in *Brady* and *Agurs* was that the jury had convicted without the benefit of the non-disclosed testimony. Such a purpose would not be served in this case where the jury did consider the evidence in question before reaching its verdict.[7] We therefore hold that even if the evidence would be deemed to be exculpatory where it is effectively presented

7. Appellant in his brief makes the general allegation of prejudice. However, the brief fails to point with particularity to the manner in which this prejudice occurred. Furthermore, our review of the record satisfies us that in fact there was no prejudice by the late disclosure of this information.

at trial and the belated disclosure does not prejudice the defense, no due process violation has occurred. *Commonwealth v. Wade,* 480 Pa. 160, 168 n. 2, 389 A.2d 560, 564 n. 2 (1978); *Commonwealth v. Gartner,* 475 Pa. 512, 381 A.2d 114 (1977). *See also U. S. v. Kaplan,* 554 F.2d 577 (3d Cir. 1977).[8]

 Next, appellant argues that the improper questioning of a defense witness on cross-examination and improper rebuttal testimony by the Commonwealth combined to create reversible error. As previously stated, during the defense, Mr. Brown was called by the defense to describe the activities of Mr. Salley during the time of the incident. Appellant challenges first the prosecution's attempts to elicit hearsay information from this witness on cross-examination. The following excerpts from the record reflect the basis for this complaint:

BY MR. SAGEL (Prosecutor):

Q. Did you learn at that time he was just someone in the street who had been—heard the shooting, pulled out a gun?

MR. BINNS (Defense Counsel): Objection.

THE COURT: . . . Would you restate that question.

Q. When you got down to Homicide, you saw this man; is that correct?

A. That's correct, sir.

Q. And you were interviewed by the police and you told. them what you knew about this incident, is that correct?

A. Yes, sir. That's correct.

8. Some courts have suggested that adequate implementation of *Brady* would require disclosure of such information prior to trial. *See U. S. v. Deutsch,* 373 F.Supp. 289 (S.D.N.Y.1974); *U. S. v. Pollack,* 534 F.2d 964 (D.C.Cir.), *cert. denied,* 429 U.S. 924, 97 S.Ct. 324, 50 L.Ed.2d 292 (1977); *U. S. v. Houston,* 339 F.Supp. 762 (N.D.Ga.1972). Other cases have taken the view that *Brady* was not intended to create pre-trial remedies. *U. S. v. Moore,* 439 F.2d 1107 (6th Cir. 1971). Our reading of the Supreme Court decisions on the subject convinces us that that Court did not intend to establish a *per se* pre-trial disclosure rule. The fact that the disclosure occurred during trial did not justify a remedy, at least absent a showing of some significant prejudice resulting from the late disclosure.

Q. And that man, do you know whether or not that man was released at that time?

MR. BINNS: Objection.

THE COURT: Was what?

MR. SAGEL: Released.

THE COURT: Overruled. Do you know if he was released?

THE WITNESS: They—the detectives said they were going to release him because—

MR. BINNS: Objection.

THE COURT: You heard the detectives say they were going to release him. The question was, do you know whether he was released?

THE WITNESS: I couldn't definitely say that he was.

THE COURT: Very well.

BY MR. SAGEL:

Q. And you learned—

THE COURT: I will overrule the objection, incidentally.

Q. You learned that no gun was found at that time, when they—

MR. BINNS: Objection.

THE COURT: Overruled. Did you learn that no gun was found?

THE WITNESS: The police—

THE COURT: Did you learn that? Did you know that?

THE WITNESS: I don't know it, but the police said it wasn't.

THE COURT: You learned it, the police told you that?

THE WITNESS: Yes, Your Honor.

THE COURT: Very well.

We agree with the appellant that the questioning was improper in that it sought to elicit hearsay testimony.[9]

---

**9.** We do not, however, agree that Mr. Brown's testimony regarding what Mr. Salley said to him in response to the question, "What's happening?", constituted hearsay evidence.

See n. 5. These statements were direct responses to the witness by Mr. Salley at the time of the occurrences.

Nevertheless, a review of the cross-examination does not reflect prejudicial reversible error. Although there were several attempts to elicit hearsay information, the Commonwealth was not successful in this regard and no information was elicited from this witness other than the fact that the police had told him that Mr. Salley was released. That fact was, of course, admitted and not in controversy. The real issue was the basis for the judgment to release Mr. Salley. The cross-examination of Mr. Brown in no way contributed information as to this point.

■ The appellant argues that the hearsay questioning of Mr. Brown was exacerbated by the court's ruling that allowed the rebuttal testimony of Detective Dougherty. It is argued that Detective Dougherty's testimony represented opinion evidence based upon hearsay. We believe that this characterization of Detective Dougherty's testimony is not accurate. The record reflects that Detective Dougherty testified that as a result of the statement of Mr. Brown, Mr. Salley was apprehended and taken into custody, that after questioning of Mr. Salley, he, Detective Dougherty, determined that Mr. Salley was not involved in the homicide and directed that he be released. The defense was given a full opportunity to challenge the judgment to release Mr. Salley. That question was ultimately left for final decision by the trier of fact. We, therefore, conclude that Detective Dougherty's testimony was clearly admissible and that the jury's factfinding function was in no way intruded upon.

■ Appellant's final objection is that the trial judge misstated the testimony of a defense witness during the course of the charge. At sidebar at the conclusion of the charge, defense counsel suggested to the court that he thought the trial judge had incorrectly recollected the testimony of the witness in question. The trial judge then instructed the jury to disregard his recollection of the testimony and substitute their own. Trial counsel asked for no further relief. The failure of defense counsel to seek a

further remedy after the attempted curative instruction precludes further review of the issue at this juncture. *See* Pa.R.Crim.P. 1119; *Commonwealth v. Glenn,* 459 Pa. 545, 330 A.2d 535 (1974).

Accordingly, the Judgments of Sentence are Affirmed.

ROBERTS, J., filed a concurring opinion.

ROBERTS, Justice, concurring.

Although the judgment of sentence should be affirmed, it must be pointed out that, irrespective of whether the Commonwealth violated *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1962), the Commonwealth clearly violated Pa.R.Crim.Proc. 305. Under Rule 305 A, effective January 1, 1978 (well before appellant's trial), the Commonwealth was obliged, before trial, to disclose "[a]ny evidence favorable to the accused which is material either to guilt or to punishment...." Accord, ABA Standards Relating to Prosecution Function § 3.11(a) (Approved Draft, 1971); Pa. Code of Prof.Resp. DR 7–103(B). Surely it must be concluded that evidence of another person's possession of a weapon at the scene of the alleged offense must be deemed "favorable" to the accused. However, appellant is not entitled to relief because the record establishes that, without prejudice to the defense, the "favorable" evidence was fully presented to the factfinder, and rejected.