629 A.2d 150

COMMONWEALTH of Pennsylvania, Appellee,

v.

Paul B. OWENS, Appellant.

Superior Court of Pennsylvania.

Argued March 10, 1993.

Filed Aug. 4, 1993.

Paul B. Owens, appellant, pro se.

Richard E. Guida, Asst. Dist. Atty., Harrisburg, for Com., appellee.

Before CIRILLO, POPOVICH and HESTER, JJ.

POPOVICH, Judge.

This case involves an appeal from a judgment of sentence entered by the Dauphin County Court of Common Pleas on August 3, 1992. We affirm.

Appellant received citations for speeding, improper passing, following too closely and three parking tickets. Thereafter, appellant was found guilty of the above offenses at summary trials before district justices. Appellant subsequently filed timely appeals to the court of common pleas, and on July 22, 1992, a trial de novo was held. Following his trial, appellant was found guilty of speeding, improper passing, following too closely and three counts of overtime parking. Appellant was ordered to pay fines totalling $451.00. Appellant's post-trial motions were denied on August 3, 1992, and this appeal followed.

Appellant raises several issues for our consideration regarding his parking and traffic violations. Appellant's initial argument concerns appellant's citation for speeding. On January 26, 1992, appellant was stopped for speeding on the Pennsylvania Turnpike by State Trooper Long. Appellant received a speeding ticket for traveling 41 miles per hour over the speed limit. At trial, appellant and the Commonwealth stipulated that if the Commonwealth "were to call Trooper Long, the trooper would testify that he cited Mr. Owens for traveling 96

miles per hour in a 55 mile per hour zone and that further the trooper does have with him and would provide for the court the necessary documentation to show that the radar had been tested and calibrated within the required periods of time." [1] N.T., 7/22/92, p. 17. The parties also stipulated that appellant asked Trooper Long to view the radar reading at the time he was stopped, and the trooper refused his request. Appellant contends that according to *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), appellant had a right to see the radar reading when the trooper stopped him for speeding. We disagree.

■ The United States Supreme Court held in *Brady,* that suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment. *Id.* 373 U.S. at 85–87, 83 S.Ct. at 1196–97. The holding in *Brady* applies to evidence that is requested during or following discovery and is withheld by the prosecution.[2] The case is not applicable to the present situation in which a person requests to view immediately a police officer's radar.[3]

Presently, appellant is asking us to rule that a police officer must justify stopping a person for speeding at the time of the stop. However, the law does not provide support for appel-

1. 75 Pa.C.S.A. § 3368(d) (relating to classification, approval, and testing of mechanical, electrical and electronic devices).

2. In *Brady,* exculpatory evidence was discovered following the trial, conviction and sentencing that had not been disclosed to the defense. The defense had requested the non-disclosed evidence prior to trial.

3. The dissent cites *Commonwealth v. Murphy,* 493 Pa. 35, 425 A.2d 352 (1981) in support of its position that Pennsylvania courts have not construed the *Brady* protection to be limited to the discovery period. However, we find that the holding of *Murphy* is not applicable to the present case. The court in *Murphy* does not discuss material requested prior to the discovery period. In *Murphy,* the defense made a request to the Commonwealth for all exculpatory material but the Commonwealth did not disclose certain exculpatory evidence until the fourth day of trial. Our Supreme Court ruled in *Murphy* that *Brady* did not mandate the disclosure of exculpatory material during the discovery process, and that if the belated disclosure of exculpatory evidence does not prejudice the defense, no due process violation has occurred. *Murphy,* 425 A.2d at 357.

lant's argument. The Commonwealth is not required to allow a suspect to view the radar at the time he was stopped. Rather, the Commonwealth must prove beyond a reasonable doubt the following to sustain a conviction for speeding:

▪ that an accused was driving in excess of the applicable speed limit, (2) that the speed timing device was approved by the Department of Transportation and, (3) that it had been tested for accuracy by an approved testing station.

*Commonwealth v. Kittleberger,* 420 Pa.Super. 104, 616 A.2d 1 (1988); 75 Pa.C.S.A. § 3362(a), 3368(a–e). Appellant does not dispute that the Commonwealth sustained its burden of proving these elements.

▪ Appellant was fully informed of the charges against him. He received notice of the charges and had an opportunity to be heard. *Parham v. Cortese,* 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Accordingly, we find that appellant was not denied a due process right when Trooper Long refused to allow appellant to see the radar.[4]

▪ Appellant's second contention is that the evidence was insufficient to sustain appellant's convictions for improper passing and following too closely. After viewing the evidence in the light most favorable to the Commonwealth as verdict winner, we find that the fact finder could find that appellant was guilty beyond a reasonable doubt of improper passing and following too closely. *Commonwealth v. Heidnik,* 526 Pa. 458, 587 A.2d 687 (1991).

A driver of a vehicle may not overtake and pass on the right of another vehicle unless the vehicle overtaken is making or about to make a left turn or the roadway is of sufficient width to allow two or more lines of vehicles moving lawfully in the direction being traveled by the overtaken vehicle. 75 Pa.

---

4. We note that to allow every individual who is stopped for speeding to enter the police car to view the radar would not be workable. Some experts recommend that the police officer never allow a traffic offender out of his car. *See Pennsylvania v. Mimms,* 434 U.S. 106, 98 S.Ct. 330, 54 L.Ed.2d 331 (1977) (Stevens, J., dissenting). This enables the traffic offender to avoid danger caused by passing traffic on the highway and protects the police officer.

C.S.A. § 3304(a). Pursuant to 75 Pa.C.S.A. § 3310, a driver of a vehicle may not follow another vehicle more closely than is reasonable and prudent.

At trial, a police officer testified that she witnessed appellant's vehicle attempting to pass the vehicle in front of it on the right hand side. The police officer further testified that she observed appellant following another police car too closely. After reviewing the evidence and the applicable law, we find, contrary to appellant's claim, the evidence was sufficient to sustain appellant's convictions.

■ Appellant's final claim involves three parking tickets received by appellant. Appellant received parking tickets for overtime parking on January 13, 1992, January 23, 1992 and February 3, 1992. The fine for each ticket was $6.00. Appellant elected to appeal each parking ticket. Following appellant's trial, appellant was ordered to pay $36.50 for each parking violation. The $36.50 included a $15.00 fine and $21.50 for the district justice hearing, district justice administrative costs and Pennsylvania Department of Transportation costs. Appellant argues that his fines for the parking violations were increased because he elected to appeal the parking tickets, and appellant claims that the increased fines violate his due process rights. Appellant reasons that a person will be discouraged from challenging a parking ticket due to the increase of the fine.

A parking violation is a summary offense. Pa.R.Crim.P. No. 95, 42 Pa.C.S.A. A defendant who is convicted of a summary offense must pay costs in accordance with 42 Pa. C.S.A. § 1725.1.[5] In regard to the fine for a parking violation, the "Comment" to Pa.R.Crim.P. No. 95, 42 Pa.C.S.A. provides the following:

Many political subdivisions use parking tickets and, therefore, many parking cases are disposed of without instituting a criminal proceeding under the procedures of these rules. A parking ticket is a device of convenience to the local

5. The trial court correctly noted that when an individual successfully appeals a parking ticket, he or she pays nothing.

government and the defendant. *It is not a citation and does not constitute the instituting of a summary proceeding; no enforcement of penalty can be based upon a ticket alone.*

The amount specified on a parking ticket cannot exceed the fine authorized for the parking violation alleged. There is no specific time which must be specified on the ticket, although of course it is advisable that such time be well within the applicable statute of limitations.

*If the defendant pays the amount specified on the parking ticket within the time specified on the ticket, the case will be concluded without the institution of a criminal proceeding.* If the defendant makes no response within the suggested time, or if the defendant indicates a desire to plead not guilty, and the subdivision desires to proceed with the case, a law enforcement officer must determine the identity of the vehicle owner from the Department of Transportation and then institute a criminal proceeding by filing a citation directly with the proper issuing authority under paragraph (a) of this rule (emphasis added).

In the present case, the fine plus costs was set at $36.50 for each parking violation. A person who has received a parking ticket for a parking violation is given the opportunity to avoid the institution of criminal proceedings and associated costs. The recipient of the ticket is also given the opportunity to pay a reduced fine. The reduced fine was $6.00 in this case.

Contrary to appellant's argument, his fine for the parking violation was not increased. Rather, he was given the opportunity to pay the amount of a parking ticket that was less than the authorized fine for his parking violation. We, therefore, find that appellant's due process rights were not violated simply because he chose not to pay the reduced fine of the $6.00 parking ticket.

Judgment of sentence affirmed.

CIRILLO, J., files a dissenting opinion.

CIRILLO, Judge, dissenting.

I most respectfully dissent. I believe that under the standard set forth in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), Owens had a right to see the radar reading at the time he was stopped, and that his due process rights were violated by the trooper's refusal to allow him to view it. While I agree with the majority's definition of the *Brady* standard, I cannot condone its narrow application to the facts of this case.

Pennsylvania courts have consistently followed the *Brady* standard in cases involving a failure to disclose exculpatory information. *See Commonwealth v. Moose*, 529 Pa. 218, 602 A.2d 1265 (1992) (prosecutor's failure to identify a witness and disclose its agreement with him violated *Brady*); *Commonwealth v. Wallace*, 500 Pa. 270, 455 A.2d 1187 (1983) (district attorney suppressed exculpatory evidence relating to the chief witness); *Commonwealth v. Santiago*, 405 Pa.Super. 56, 591 A.2d 1095 (1991), *appeal denied*, 529 Pa. 633, 600 A.2d 953 (1991) (trial court owed duty to defendant to disclose testimony offered during interviews with a key witness which would exonerate him of the murder charge). As a matter of policy and fundamental fairness to the accused, the *Brady* standard should be construed to require disclosure of *all* exculpatory evidence in existence before, during, and after trial including that which exists prior to the discovery period and is specifically requested for viewing by the accused. Nowhere in *Brady* does the Supreme Court limit its protection to evidence requested *during* discovery that is withheld by the prosecution. In fact, in *Brady*, the non-disclosed evidence was first discovered after the trial, conviction and sentencing. *Brady*, 373 U.S. at 84, 83 S.Ct. at 1195. Likewise, Pennsylvania courts have not construed the *Brady* protection to be limited to the discovery period. *Commonwealth v. Murphy*, 493 Pa. 35, 425 A.2d 352 (1981). In *Murphy*, the Pennsylvania Supreme Court noted that *Brady* was not intended as a rule of discovery in criminal cases. *Id.* 425 A.2d at 357.

Finally, the majority incorrectly applies Pa.R.Crim.P. 305 in holding that the Commonwealth is not required to provide a

defendant with inculpatory evidence until after the discovery process has begun. The instant matter is a summary case, not a court case. The official comments following Rule 305 state that the rule is intended to apply only to court cases. *Id.* The comments further state that "the constitutional guarantees mandated in *Brady,* . . . . and the refinements of the *Brady* standards embodied in subsequent judicial decisions, apply to all cases, including court cases and summary cases, and nothing to the contrary is intended." *Id.* Thus, the *Brady* analysis is dispositive of this matter while Rule 305 is inapplicable.

Under *Brady,* I would find that Owens's due process rights were violated when the trooper refused the appellant's request to view the radar reading when he was stopped. Therefore, I respectfully dissent.