J-S17037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| WILLIAM TOMAS TORRES | : | |
| | : | |
| Appellant | : | No. 1927 EDA 2021 |

Appeal from the Judgment of Sentence Entered August 25, 2021
In the Court of Common Pleas of Montgomery County
Criminal Division at No:  CP-46-CR-0007976-2019

BEFORE:  BOWES, J., LAZARUS, J., and STABILE, J.

MEMORANDUM BY STABILE, J.:                    **FILED JULY 21, 2022**

Appellant, William Torres, appeals from the judgment of sentence imposed in the Court of Common Pleas of Montgomery County on August 25, 2021, after a jury convicted him of first-degree murder.  18 Pa.C.S.A. § 2502(a).  Appellant contends the trial court erred with regard to two evidentiary rulings and by questioning a juror out of the presence of Appellant and Appellant's counsel.  Upon review, we affirm.

As the trial court explained:

Appellant's conviction[] arose out of the shooting death of his ex-girlfriend, Jeanne Edwards, on November 25, 2019.  On that date, Appellant purchased a shotgun and drove from his home in Elkton, Maryland to Ms. Edwards' home in Huntingdon Valley, Montgomery County, Pennsylvania.  At around 5:15 p.m., Appellant entered Ms. Edwards' home, and within minutes he fatally shot her twice in the torso.

Trial Court Opinion, 11/10/21, at 1.

The trial court noted that there was a domestic incident between Appellant and Ms. Edwards at Appellant's Maryland home approximately two months before the murder. On that occasion, Appellant was arrested and charged with second-degree assault. Prior to a November 18, 2019 trial on that charge, Appellant attempted to buy a shotgun at a pawn/gun shop in Maryland on October 29, 2019. Because of a five-day waiting period, he was unable to purchase a gun that day. ***Id.*** at 2.

At Appellant's November 18, 2019 trial on the assault charge, Ms. Edwards testified that her relationship with Appellant was over and that they would move forward with their lives separately. Appellant was acquitted at the conclusion of the assault trial. At his August 2021 murder trial, the Commonwealth presented an audio recording of Ms. Edwards' testimony from the assault trial. ***Id.***

One week after the assault trial, at approximately 1:52 p.m. on November 25, 2019, Appellant returned to the pawn/gun shop and bought the Winchester shotgun (along with birdshot ammunition) that he attempted to purchase on October 29, 2019. ***Id.*** at 3. The trial court summarized additional details from the day of the murder as follows:

> Earlier in the day of November 25, 2019, appellant woke up at his then current girlfriend's Cynthia Phifer, house in Linfield, Pennsylvania. He left her house around 8:30 a.m. Detective Bill Mitchell, an expert in historical call detail record analysis, detailed Appellant's movements from that time, throughout the day up until the time of the murder. According to Detective Mitchell's testimony Appellant's cell phone traveled in a southerly direction from Ms. Phifer's house in Linfield and ended up at his residence

at about 11:28 a.m.  At about 10:56 a.m. there was an outbound phone call to Ms. Edwards' cell phone that lasted about 36 seconds.  At around 12:28 p.m. the cell phone records show Appellant's phone moving away from his residence and moves towards the vicinity of the J&K gun store location, but then travels back to the area of the gun store around 1:51.  In the interim between 1:32 p.m. and 1:53 p.m., there was an incoming call from Ms. Edwards' cell phone to Appellant's cell phone.  Around 2:31 p.m. to 2:57 p.m. the records indicate that appellant went back to the area of his residence.  By 3:53 p.m., Appellant's cell phone was traveling in Wilmington, Delaware, and it travels up and is in the area of Ms. Edwards' residence at 5:18 p.m.

According to the testimony of Alex Edwards, Ms. Edwards' son, he arrived at his mother's home on November 25, 2019, in the time frame of 5:15 p.m. and 5:30 p.m.  As he entered the home, he was greeted by Appellant, who was pointing a gun at him.  Appellant told Mr. Edwards that his mother had ruined [Appellant's] life.  [Appellant] then exited through the garage and ran away from Ms. Edwards' home.  Mr. Edwards located his mother's lifeless body in the living room, and called 911 at about 5:23 p.m.

With the help of Ms. Phifer, Appellant turned himself into police later that evening.

*Id.* at 3-4 (references to notes of testimony omitted).

The Commonwealth presented expert testimony from the forensic pathologist who performed the autopsy on Ms. Edwards.  The autopsy revealed two gunshot wounds to the torso, both of which were in an area of the body vital for sustaining life and were shot from about two feet away.  The pathologist found small pellets released from the bullets lodged in Ms. Edwards' heart, lungs, and the soft tissue of the aorta.  Considering the shots collectively, Ms. Edwards would have had a heartbeat for about 25 to 28 seconds after the gunshots.  *Id.* at 4 (citing notes of testimony).

The trial court further explained:

> Appellant testified on his own behalf, and testified that he went to Ms. Edwards' home that day to kill himself with the shotgun and to do that in front of her. Appellant also testified that Ms. Edwards' death was caused by his mishandling of the shotgun, and that it was all a tragic accident.

*Id.* at 5 (citing notes of testimony). Again, the jury returned a verdict of guilty on the charge of first-degree murder. The trial court immediately sentenced Appellant to life in prison.

On September 3, 2021, Appellant filed a post-sentence motion, which the court denied on September 9, 2021. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant asks us to consider three issues in this appeal:

1. Did the trial court err in admitting evidence of prior bad acts involving a prior incident between [Appellant] and the decedent on September 22, 2019 when [Appellant] had been acquitted on charges arising from the incident?

2. Did the trial court err in questioning Juror #1, without [Appellant] or defense counsel present, regarding whether the juror had spoken to other jurors regarding his familiarity with the area of the crime, his familiarity with a friend of the decedent's family, and his potential bias?

3. Did the trial court err in precluding [Appellant] from testifying as to his desire to commit suicide in the weeks leading up to the killing of the decedent[?]

Appellant's Brief at 3.

Appellant's first and third issues stem from evidentiary rulings made by the trial court. In *Commonwealth v. Woeber*, 174 A.3d 1096 (Pa. Super. 2017), this Court reiterated:

> As our Supreme Court has explained, "[t]he admissibility of evidence is a matter solely within the discretion of the trial court. This Court will reverse an evidentiary ruling only where a clear abuse of discretion occurs." *Commonwealth v. Johnson*, 536 Pa. 153, 638 A.2d 940, 942 (1994) (citation omitted). "Generally, an appellate court's standard of review of a trial court's evidentiary ruling is whether the trial court abused its discretion; however, where the evidentiary ruling turns on a question of law our review is plenary." *Buckman v. Verazin*, 54 A.3d 956, 960 (Pa. Super. 2012) (citations omitted).

*Id.* at 1100.

In his first issue, Appellant challenges the trial court's admission of "prior bad acts" evidence relating to the September 22, 2019 incident between Appellant and Ms. Edwards. Appellant argues that the trial court erred by admitting the evidence because Appellant was acquitted of assault charges stemming from that incident. Appellant contends that admission of the evidence violated Appellant's right against double jeopardy because "it forced [Appellant] to retry an incident for which he had been acquitted." Appellant's Brief at 12.

The Commonwealth contends the issue is waived because Appellant did not raise this constitutional challenge before the trial court. Commonwealth Brief at 8 (citing *Commonwealth v. Berryman*, 649 A.2d 961, 973 (Pa. Super. 1994) ("[t]he Pennsylvania Supreme Court has clearly held that constitutional issues . . . are waived if not properly raised in the trial court"). Further, the Commonwealth asserts waiver for Appellant's failure to raise the issue in his Rule 1925(b) concise statement of errors.

Initially we note that Pa.R.E. 103(a) (Preserving a Claim of Error) provides, in relevant part:

> A party may claim error in a ruling to admit or exclude evidence only:
>
> (1)   if the ruling admits evidence, a party, on the record:
>
> (A) makes a timely objection, motion to strike, or motion *in limine*; and
>
> (B) **states the specific ground**, unless it was apparent from the context[.]

Pa.R.E. 103(a) (emphasis added).

Prior to trial, Appellant filed a motion *in limine* seeking to exclude allegations of the September 25, 2019 assault as a prior bad act, relying on Pa.R.E. 404(b)(1)-(3) (Other Crimes, Wrongs, or Acts).  Appellant's Motion *in Limine*, 6/1/20.  Appellant did not assert any constitutional basis for the requested relief.  In addition, the Commonwealth filed a motion to admit evidence of Appellant's acts from the September 2019 incident.  Motion to Admit Evidence of Other Crimes, Wrongs or Acts of the [Appellant], 6/8/20.  The Commonwealth also relied upon Pa.R.E. 404(b)(1)-(3) in support of admission of the evidence.

The trial court conducted a pre-trial motions hearing on May 17, 2021, during which it considered both parties' motions regarding admission of evidence concerning the September 2019 incident.  On May 21, 2021, the trial

court granted the Commonwealth's motion and the evidence was admitted during Appellant's August 2021 trial.

In his Rule 1925(b) statement, Appellant challenged the trial court's admission of prior bad acts evidence, but did not present or even suggest any constitutional basis for the challenge. The trial court addressed admissibility of the evidence in its Rule 1925(a) opinion, but only in terms of the arguments previously raised with respect to Pa.R.E. 404(b).

Because Appellant did not state the specific ground, *i.e.*, double jeopardy implications, for excluding the evidence in his motion *in limine*, during trial, or in his Rule 1925(b) statement, we find that the issue has not been preserved for appeal and is, therefore, waived. ***See, e.g., Berryman***, 649 A.2d at 973 (recognizing that our Supreme Court has held that constitutional issues are waived if not properly raised in the trial court); ***Commonwealth v. Perez***, 103 A.3d 344, 347 n.1 (Pa. Super. 2014) (failure to adequately identify an issue in a concise manner in a Rule 1925(b) statement impedes the trial court's preparation of its legal analysis); and Pa.R.A.P 302(a) ("issues not raised in the trial court are waived and cannot be raised for the first time on appeal").

Even if not waived, Appellant would not be entitled to relief on his claim regarding admission of evidence relating to the September 2019 incident. In its Rule 1925(a) opinion, the trial court summarized the parties' arguments on the issue presented at the May 2021 hearing. After acknowledging that

evidence of prior bad acts is not admissible to demonstrate a defendant's propensity to commit crimes, the court noted that prior bad acts may be admitted as proof of motive or intent, or if they are a part of a chain or sequence of events forming the history of the case. Still, the probative value must outweigh the potential for unfair prejudice. *See* Rule 1925(a) Opinion, 11/10/21, at 9 (citing, *inter alia*, ***Commonwealth v. Melendez-Rodriguez***, 856 A.2d 1278, 1283 (Pa. Super. 2004); ***Commonwealth v. Moser***, 999 A.2d 602, 605-06 (Pa. Super. 2010); ***Commonwealth v. Hairston***, 84 A.3d 657, 665 (Pa. 2014)).

The trial court explained:

> In this case, this court permitted the Commonwealth to introduce the September [22], 2019 incident based upon motive, intent, and *res gestae*. "In order for evidence of prior bad acts to be admissible as evidence of motive, the prior bad acts must give sufficient ground to believe that the crime currently being considered grew out of or was in any way caused by the prior set of facts and circumstances." ***Commonwealth v. Knox***, 142 A.3d 863, 866-67 (Pa. Super. 2016). In addition, the *res gestae* exception applies to bad acts "which are so clearly and inextricably mixed up with the history of the guilty act itself as to form part of one chain of relevant circumstances, and so could not be excluded on the presentation of the case before the jury without the evidence being rendered thereby unintelligible." ***Commonwealth v. Knoble***, 188 A.3d 1199, 1205 (Pa. Super. 2018) (citation omitted). The September 22, 2019 incident went to Appellant's motive and was bound up in the chain of events that led to Ms. Edwards' death. It was the Commonwealth theory that Appellant and Ms. Edwards had a turbulent relationship evidenced by the September 22, 2019 incident and that that incident led Ms. Edwards to end the relationship. However, Appellant did not want the relationship to end, and that it was due to Ms. Edwards' ending the relationship that caused him to kill her a week after the November 18, 2019 Maryland trial, where she stated on the record that their relationship was over. . . . It goes to Appellant's motive

in wanting to kill Ms. Edwards for ending their relationship . . . and it was integral to understanding the unfolding of events that eventually led to her death.

*Id.* at 10-11. In other words, the September 22, 2019 incident led to the November 18, 2019 trial during which Ms. Edwards testified the relationship was over and the parties would be moving forward separately. That, in turn, led to Appellant's purchase of a shotgun on November 25, 2019 and to the murder of Ms. Edwards the same day. *Id.* at 11. Anticipating Appellant's assertion that the November 25 shooting was accidental, the evidence was relevant and probative not only of Appellant's motive, but also of his intent, thus outweighing any prejudice. *Id.* Finally, the trial court recognized that the fact Appellant was acquitted of the Maryland charges "is of no moment. Under Rule 404(b), prior bad acts are not confined to convictions." *Id.* at 11-12.

Based on our review, we discern no abuse of discretion on the part of the trial court in permitting evidence regarding the September 22, 2019 incident. Therefore, even if not waived, we would not disturb the court's ruling. Appellant's first issue fails.

In his second issue, Appellant contends the trial court erred in questioning Juror #1 outside the presence of Appellant or Appellant's counsel. As the trial court explained, prior to reconvening proceedings on the second day of trial, the court received a note from Juror #1 explaining that after the previous day's proceedings, he realized that the crime occurred near his home.

He indicated he saw a friend of his, who was good friends with Ms. Edwards, sitting with Ms. Edwards' family in the courtroom and was concerned he might be biased.

The trial judge stated on the record that he had received the communication and noted the agreement by the court and counsel to replace the juror with an alternate. Appellant's counsel expressed concern that Juror #1 may have mentioned something to other jurors. The judge responded that he would question Juror #1 about any communications with other jurors and would report on his findings. Appellant's counsel thanked the court.

After the judge interviewed Juror #1, he reported that the juror was adamant he had not spoken with any other jurors, explaining that his recognition of the friend sitting with Ms. Edwards's family did not occur to him until he was driving home the night before and that he reported his concerns immediately upon arriving at the courthouse on the second day of trial. The judge advised counsel that he excused the juror and did not see any other issue. Rule 1925(a) Opinion, 11/20/21, at 12-13.

At that point, Appellant's counsel expressed concern with the potential prejudice of replacing a juror and the way it would look to the jury. Counsel then requested a mistrial based on the excused juror's knowledge of the case and the confusion stemming from replacing a juror. She explained, "[Y]ou told [the jury] where this occurred, the names of the people involved, and the location. The fact that that didn't ring a bell for him is concerning to me and

the defense would request a mistrial." *Id.* at 13 (quoting notes of testimony, 8/24/21, at 11). The trial court denied the motion and stated it would provide a neutral explanation as to why Juror #1 was excused. Rule 1925(a) Opinion, 11/10/21, at 13-14.

In its Rule 1925(a) opinion, the trial court highlighted the fact that Appellant did not challenge the denial of a mistrial, but rather complained only of questioning Juror #1 outside the presence of Appellant or his counsel. *Id.* at 14. The court determined the issue was waived "because there was no objection to the procedure in which this court questioned Juror Number 1. In fact, the record reveals defense counsel implicitly agreed to this procedure." *Id.* We agree. Moreover, Appellant has failed to demonstrate how the trial court's interview of a juror who was then dismissed could in any way constitute trial court error. Appellant cites cases in which *ex parte* or *in camera* conversations with jurors constituted reversible error due to mistaken impressions those jurors might have taken from the conversations. *See* Appellant's Brief at 20-21. However, those cases are inapposite. The remaining jurors had no knowledge of the discussion between the trial court and Juror #1 and could not have mistaken impressions as a result of those discussions.

We agree that Appellant's second issue is waived. However, even absent waiver, the issue would fail for lack of merit.

In his third issue, Appellant contends the trial court committed error by precluding Appellant from testifying about his desire to commit suicide in the weeks preceding the killing of Ms. Edwards. Appellant testified that upon being denied immediate purchase of the shotgun in October 2019, he decided upon a quicker way to end his life by taking every pill in his house. Notes of Testimony, 8/24/21, at 250. Counsel for the Commonwealth objected based upon the trial court's June 4, 2021 pre-trial ruling in which it granted the Commonwealth's Motion to Exclude Evidence of [Appellant's] Threats of Self-Harm and Psychiatric/Psychological Treatment/Diagnosis.[1] Following an off-the-record discussion in the robing room, the court sustained the Commonwealth's objection.

After the defense rested, the trial court permitted counsel for both parties to place on the record, out of the hearing of the jury, the substance of the discussion that took place in the robing room. Counsel for Appellant explained that Appellant's depression and suicidal thoughts were part of the *res gestae*, *i.e.*, the story of the case. Counsel for the Commonwealth countered that the events that occurred—and any suicidal thoughts Appellant

---

[1] In its order, the trial court explained that it "reviewed the proposed evidence, which consisted of statements by witnesses concerning [Appellant's] mental health; however, the substance of the proposed testimony is not admissible because it is irrelevant to [Appellant's] mental state 'at a time and place very close to the commission of the crimes for which he is charged.'" Trial Court Order, 6/4/21, at 1 (citing **Commonwealth v. Murphy**, 425 A.2d 352, 355 (Pa. 1981)).

might have had—when Appellant first attempted to purchase the shotgun in October were too remote in time from the date of the murder and, therefore, its probative value was very low.

The trial court concluded that the events on the day in October when Appellant first went to the gun store were "very remote from the shooting of November 25th. The October state of mind was not made contemporaneously with the event in question." Notes of Testimony, 8/24/21, at 321. The court stated, "In fact, what's significant here is that even that, according to [Appellant] in his testimony, it was her phone call on the morning of [November] 25th that was the triggering event that led to his plan to kill himself in front of her. That didn't exist in October." *Id.*

On the following day, the court elaborated on its ruling. In essence, the court determined that Appellant's testimony suggesting that he contemplated suicide in October "was not a statement made to another person. This is what [Appellant] was thinking, according to him, and this comes some two years after the shooting. He's had ample time for reflection. There is no guarantee of trustworthiness in what he was thinking." Notes of Testimony, 8/25/21, at 3-4. The court explained that Pa.R.E. 803(3) (Then-Existing Mental, Emotional, or Physical Condition) "applies to statements, not mere thoughts two years later. . . . There's no way of establishing when this thought was made other than through the testimony of [Appellant] some two years later when he has a great interest in the outcome of the situation." *Id.* at 4.

In its Rule 1925(a) opinion, the court summarized its evidentiary ruling and its conclusion that Appellant's proposed testimony was unreliable and untrustworthy, noting that "Appellant sought to testify as to his thoughts, allegedly suicidal, that he had at the time he attempted to first purchase a shotgun on October 29, 2019. He wanted to testify as to these thoughts, which were not expressed to anyone at that time, two years later at his murder trial." Rule 1925(a) Opinion, 11/10/21, at 19. "Therefore, Appellant's state of mind in October of 2019, when he first attempted to purchase the shot gun, would not have informed the jury of his *mens rea* on the day of the murder on November 25 2019. For these reasons, the court properly determined this evidence to be inadmissible." *Id.* at 20.

Mindful that our standard of review of evidentiary issues is abuse of discretion, we conclude the trial court did not abuse its discretion in precluding Appellant from testifying as to his alleged desire to commit suicide in the weeks leading up to the murder of Ms. Edwards. Therefore, Appellant's third issue fails.

Based on our review, we find each of Appellant's issues is either waived or meritless. Therefore, we shall affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 7/21/2022*