394 A.2d 483

**COMMONWEALTH of Pennsylvania**
v.
**Harvey G. JARVIS, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 1978.

Decided Nov. 18, 1978.

F. Emmet Ciccone, Philadelphia, for appellant.

Edward G. Rendell, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Robert B. Lawler, Chief, Appeals Div., Gaile McLaughlin Barthold, Asst. Dist. Attys., Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Harvey G. Jarvis, was convicted by a jury of voluntary manslaughter and a weapons violation. Post-verdict motions were denied and appellant was sentenced to one to ten years' imprisonment for the voluntary manslaughter conviction, with a consecutive probationary term of five years for the weapons violation. This direct appeal followed.[1]

The facts are as follows. On March 8, 1975, appellant was tending bar at Ed and Mickey's Chaise Lounge Bar in North Philadelphia. At various times during the day, the victim,

---

1. The weapons offense was appealed to Superior Court, which certified the appeal to this court.

Ernest Harville, had been in the bar arguing with appellant about Selena Harris, who evidently had been seeing both men. During these arguments, the victim told appellant, "Either you're going to kill me or I'm sure as hell going to kill you."

At approximately 11:00 p. m., appellant received a phone call from Ms. Harris telling him that Harville had been to her apartment with a gun stating that he was going to kill appellant. After receiving this call, appellant took a gun from behind the bar and placed it in his back pocket.

Shortly thereafter, the victim arrived at the bar, but various patrons prevented him from entering. At that time, Ms. Harris called the bar and asked to speak with the victim. Harville was allowed to enter the bar and went into a phone booth.

Since the victim appeared to have calmed down upon entering the bar, appellant approached the phone booth. As he approached the booth, he heard the victim state, "Here comes [Jarvis] now. I'm going to blow his . . . brains out." Because appellant thought that the victim was reaching for a gun, he pulled his own weapon and shot the victim three times. The victim died as a result of these wounds.

Appellant first alleges that the trial court erred when it failed to instruct the jury on involuntary manslaughter. We do not agree with appellant for two reasons. The facts are as follows.

When appellant was indicted, he was charged with murder, voluntary manslaughter, involuntary manslaughter and various weapons offenses. At the commencement of trial, appellant's counsel requested that the involuntary manslaughter indictment be consolidated with the other charges, "As I [defense counsel] intend to ask for a charge on involuntary manslaughter at the end of trial." The trial court, however, refused the motion for consolidation. Subsequently, appellant never requested that the trial court instruct the jury on involuntary manslaughter. Under these circumstances, we believe this claim has been waived.

Pa.R.Crim.P. 1119 provides:

"(a) *Any party may submit to the trial judge written requests for instructions to the jury. Such requests shall be submitted within a reasonable time before the closing arguments,* and at the same time copies thereof shall be furnished to the other parties. The trial judge shall charge the jury after the arguments are completed, and shall then rule on all written requests.

"(b) *No portions of the charge nor omissions therefrom may be assigned as error, unless specific objections are made thereto before the jury retires to deliberate.* All such objections shall be made beyond the hearing of the jury." (Emphasis added.)

As appellant neither submitted a written request for an involuntary manslaughter instruction nor objected to the court's failure to so charge, we believe this claim has been waived.[2]

Appellant cites *Commonwealth v. Moore,* 463 Pa. 317, 344 A.2d 850 (1975) [opinion of the court by Justice (now Chief Justice) Eagen and by Justice O'Brien], to buttress his position that the court erred in not charging on involuntary manslaughter. There, we held that where evidence existed which would support a finding of involuntary manslaughter, it was error to refuse a motion to consolidate an involuntary manslaughter indictment with the other charges. In *Moore,* however, the defendant, in addition to requesting consolidation, specifically requested that the court charge the jury that involuntary manslaughter was a permissible verdict. In the instant case, no such request accompanied appellant's motion to consolidate. Further, the facts in this case would not support an involuntary manslaughter charge and appellant claimed to have shot the victim in self-defense.

The Crimes Code provides:

". . . A person who intentionally or knowingly kills an individual commits voluntary manslaughter if at the

---

**2.** Appellant submitted the following point for charge:
"You have three possible verdicts:
"(a) guilty of murder in the third degree; or
"(b) guilty of voluntary manslaughter; or
"(c) not guilty."

time of the killing he believes the circumstances to be such that, if they existed, would justify the killing under Chapter 5 of this title, but his belief is unreasonable." Act of December 6, 1972, P.L.1482, No. 334, 18 Pa.C.S.A. § 2503(b).

Since appellant presented no evidence of involuntary manslaughter, *Moore* is inapplicable, even dismissing appellant's failure to specifically request an involuntary manslaughter instruction. We thus find no error in the trial court's failure to charge on involuntary manslaughter.

Appellant next cites five instances of alleged prosecutorial misconduct during the district attorney's closing remarks, claiming that any one of the five entitles him to a new trial. We will discuss each alleged instance of prosecutorial misconduct *ad seriatim*.

The American Bar Association Standards Relating to the Prosecution Function and the Defense Function § 5.8 (Approved Draft 1971) provides:

"Argument to the jury.

"(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw.

"(b) It is unprofessional conduct for the prosecutor to express his personal belief or opinion as to the truth or falsity of any testimony or evidence or the guilt of the defendant.

"(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.

"(d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict."

It is with these standards in mind that we must review appellant's claims of alleged prosecutorial misconduct. *Commonwealth v. Cherry*, 474 Pa. 295, 378 A.2d 800 (1977).

■ Appellant first argues that the prosecutor exceeded the bounds of permissible comment when he suggested that a certain Commonwealth witness was very credible. Appellant, however, neither objected to this remark nor included it in written post-verdict motions. Thus, the claim has not been preserved for appellate review. *Commonwealth v. Blair*, 460 Pa. 31, 331 A.2d 213 (1975); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).

■ Appellant next complains of the prosecution's reference to a "love triangle" in the instant case. As the evidence presented at trial showed that Selena Harris had been seeing both appellant and the victim, we find no error in the prosecutor's use of the term.

Appellant's next complaint concerns the following exchange:

"MR. KOGAN [assistant district attorney]:

"Ladies and Gentlemen, I submit to you, that rather the more credible explanation for what you have heard in this case, is that the defendant lied and that the defendant and Selena were determined to be rid of Ernie and that Ernie was set up.

"MR. CICCONE [Defense Counsel]: Objection.

"THE COURT: Sustained.

"MR. KOGAN: All right, maybe 'set up' is not the proper word—

"MR. CICCONE: Your Honor, I can't hear what he is saying.

"THE COURT: He said, 'set up' is not the proper word. Your voice is heavy, when you drop it we can't hear you.

"MR. KOGAN: Oh, I'm sorry. Maybe I'll stand over here. I haven't stood over here the whole time I talked.

I'm encouraging you to step back from the sort of cleanliness of this Courtroom and the sterile environment that you are in, and regard that this took place in a real bar, real people, real phone booth, real body, and imagine the movements of the people. And if it makes sense to you, Ladies and Gentlemen, that the defendant's story has

a ring of truth, you've made a decision, when it is the Commonwealth's position to propound the evidence. And, I say that to you fully aware of the awesome nature of the decision. The decision that indeed, the killing was a scheme, a premeditated—

"MR. CICCONE: Objection.

"THE COURT: All right. I'll sustain it as far as 'scheme.'

"MR. KOGAN: A plan, thought of in the beginning from before, executed with cool deliberation." [3]

Appellant's objection is threefold. He first complains of the characterization of his testimony as that of a liar. He further objects to the use of both the terms "set up" and "scheme".

■ We first believe that the claim concerning the prosecutor's reference to appellant as a liar has been waived. When counsel objected, the objection could have referred to either the "liar" comment or the use of the term "set up." By failing to specify that his objection went to the "liar" reference, we believe that portion of the claim is waived, especially since the court sustained appellant's objection. Cf. *Commonwealth v. Glenn*, 459 Pa. 545, 330 A.2d 535 (1974).

■ The objection to the "set up" remark and the use of the term "scheme" has been preserved. As we stated in *Commonwealth v. Stoltzfus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1975):

". . . [W]here the language of the district attorney is intemperate, uncalled for and improper, a new trial is not necessarily required. *Commonwealth v. Crittenton*, 326 Pa. 25, 31, 191 A. 358 (1937); *Commonwealth v. McHugh*, 187 Pa.Super. 568, 577, 145 A.2d 896 (1958). The language must be such that its 'unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and

**3.** At the close of this prosecutor's argument and prior to the court's charging the jury, appellant moved for a mistrial on these grounds. The motion was refused.

hostility toward the defendant, so that they could not weigh the evidence and render a true verdict.' *Commonwealth v. Simon*, 432 Pa. 386, 394, 248 A.2d 289, 292 (1968). See also *Commonwealth v. Myers*, 290 Pa. 573, 139 A. 374 (1927). The effect of such remarks depends upon the atmosphere of the trial, *Commonwealth v. Dickerson*, 406 Pa. 102, 110, 176 A.2d 421 (1962); *Commonwealth v. Del Giorno*, 303 Pa. 509, 519, 154 A. 786 (1931), and the proper action to be taken is within the discretion of the trial court. *Commonwealth v. Silvis*, 445 Pa. 235, 237, 284 A.2d 740 (1971); *Commonwealth v. Simon*, supra. . . ."

We do not believe that the prosecutor's remark that the killing was a "set up" and a "scheme" is of such a prejudicial nature as to require granting of a new trial.[4]

■ Appellant next complains of the following portion of the district attorney's summation:

"The Doctor, Psychiatrist, gives an opinion. That's his right under the law, it doesn't mean you have to swallow everything he says; doesn't mean you are to accept his word as gospel; that goes for the Medical Examiner as well.

"Now, the thing I want you to be very, very sure of, is that you don't start to believe the defendant's story just because the law permits him to tell it to a Psychiatrist, and have the Psychiatrist come in and testify to it; remember that now.

"Just don't confuse the defendant's story with the emblem of a doctor. In other words, don't shy away from disbelieving the defendant's story just because you heard a doctor syphon it off to you. He became conduit as were it [sic] for the defendant's story—

"MR. CICCONE [Defense Counsel]: Objection.

---

4. When speaking about the three alleged errors in this group, we can see no prejudice to appellant. All three comments were part of the prosecutor's argument attempting to convince the jury that appellant was guilty of murder of the first degree. The jury evidently disagreed with the district attorney, as the verdict of guilty of voluntary manslaughter is consistent with a finding of an imperfect self-defense claim.

"THE COURT:    Sustained."

We find nothing objectionable in the above-quoted portion of the prosecutor's closing.

At trial, appellant called Dr. Robert Sadoff, a psychiatrist, who testified that appellant's trial testimony about the incident was the same as appellant had told Dr. Sadoff during his psychiatric examination.    Specifically, Dr. Sadoff testified:

"I don't think he consciously manufactured that [the fact the decedent was reaching for what defendant believed was a gun] in order to lie to me.    I think he may have unconsciously believed that himself, and when he communicated it to me, I think he absolutely believed it.    *Whether it's true or not, I have no way of substantiating it.*"    (Emphasis added.)

When viewed with the doctor's testimony in mind, the prosecutor's comments told the jury no more than (1) the jury did not have to believe expert testimony simply because the expert was allowed to express his opinion, and (2) simply because Dr. Sadoff repeated appellant's trial testimony did not make that testimony any more credible.    We can thus find no error in this portion of the prosecutor's closing.

■    Finally, the district attorney told the jury:

"I've asked you in the beginning to use your common sense.    Now, your common sense is going to, I trust, bring you to what may be a very unpleasant task for you.    It's not easy to stand up in this room or any room, and say guilty of murder in the first degree.    The consequences, if you do not, are staggering."

Appellant now complains of this remark, but since he neither objected to the remark at trial nor included it in post-verdict motions, this question has not been preserved for appellate review.    *Commonwealth v. Blair, supra; Commonwealth v. Clair, supra.*

Judgments of sentence affirmed.

POMEROY, J., took no part in the consideration or decision of this case.

NIX and MANDERINO, JJ., concur in the result.