485 A.2d 397

**COMMONWEALTH of Pennsylvania**

v.

**Ronald JOHNSON, Appellant.**

Superior Court of Pennsylvania.

Submitted Jan. 20, 1984.

Filed Oct. 26, 1984.

Reargument Denied Jan. 7, 1985.

2

4

Alan Ellis, Philadelphia, for appellant.

Jane C. Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before BROSKY, WIEAND and HESTER, JJ.

HESTER, Judge:

Appellant, Ronald Johnson, perfected this appeal from the judgment of sentence entered November 12, 1980. He was convicted by jury of second-degree murder, criminal conspiracy and robbery. A life sentence was imposed on the murder bill; the criminal conspiracy bill brought a concurrent sentence of not less than five nor more than ten years' imprisonment. Inasmuch as robbery merged with second-degree murder, no sentence was imposed on the robbery bill.

It is appellant's first contention that the evidence was insufficient to sustain the verdict with respect to murder of the second degree. According to appellant, the victim was shot and killed by one Galin Tate following the departure of appellant and his accomplices from the scene of the robbery. The killing facilitated neither the robbery nor the escape. Since the murder was not in furtherance of the criminal plan to commit robbery, appellant argues that his

murder conviction through application of the felony murder rule was without evidentiary basis.

This argument necessitates a review of the facts. On July 12, 1979, shortly after midnight, Gloria Oree, a man known only as Jibreel, Donald Colefield and Bruce Porter were in the basement of Loretta Turner's home at 1232 West College Avenue in Philadelphia.[1] Ms. Turner's eight-year-old daughter, Kadijra, was sleeping on the second floor.

Immediately after Jibreel left to purchase cigarettes, appellant, Galin Tate, Anthony Murray and a fourth man knocked on the front door. Porter opened the door, and the men abruptly entered with Tate wielding a single-barrel shotgun and Murray brandishing a double-barrel shotgun. Appellant and the fourth man were unarmed at that moment.

Colefield walked to the first floor upon hearing the intruders. As he arrived, Colefield was ordered by Murray to face the wall and submit to a search. Murray and appellant searched Colefield for valuables while Porter argued with Tate. Shortly thereafter, Murray searched the second floor while appellant and Tate detained Colefield and Porter.

When Murray returned to the first floor, having uncovered nothing of value, Tate inquired of Colefield where the amphetamine and money were kept. Realizing that Ms. Oree possessed cash, Colefield directed them to the basement. Murray retrieved $200.00 in cash from a table without knowing that Oree was hiding behind the furnace.

As Murray emerged from the basement, he continued out the front door with appellant and the fourth man. Tate remained behind to caution Porter not to obstruct their future visits. Porter reluctantly pledged his cooperation, making it apparent that he had no choice while Tate was armed with a deadly weapon. Tate departed. Apparently piqued by Porter's earlier resistance, Tate returned within

---

1. Ms. Oree and Ms. Turner were sisters-in-law. Ms. Turner and her boyfriend departed earlier that evening to make repairs on another house.

seconds and fired the single-barrel shotgun into Porter's midriff. Porter died shortly thereafter.

■ Whether appellant was standing on the stoop or three blocks from the residence at the moment Porter was killed is of no consequence. Conversely, if there was evidence that appellant voluntarily abandoned the conspiratorial plan prior to Tate's return to shoot Porter, or that Tate's act was not in furtherance of the robbery, then there was insufficient evidence to convict appellant of murder.

■ Persons, other than the slayer, are criminally liable for a homicide committed in the perpetration of a felony, providing there is a conspiratorial plan formulated by them and the slayer to commit the underlying felony, and the homicide was in furtherance of the felony. *Commonwealth v. Waters*, 491 Pa. 85, 418 A.2d 312 (1980); *Commonwealth v. Allen*, 475 Pa. 165, 379 A.2d 1335 (1977). The Pennsylvania Supreme Court reflected upon the policy for holding a co-conspirator responsible for murder occurring during the commission of statutorily-designated felonies:

> ... the law, via the felony-murder rule, allows the finder of fact to infer the killing was malicious from the fact that the actor engaged in a felony of such a dangerous nature to human life because the actor, as held to a standard of a reasonable man, knew or should have known that death might result from the felony.

*Commonwealth v. Legg*, 491 Pa. 78, 82, 417 A.2d 1152, 1154 (1980).

■ Whether Porter's death was in furtherance of the conspiracy was for the jury's determination. *Commonwealth v. McNeal*, 456 Pa. 394, 319 A.2d 669 (1974). Additionally, it is immaterial whether appellant actually expected Porter's death. He may be charged with knowing that death would result from the robbery. *Commonwealth v. Martin*, 465 Pa. 134, 348 A.2d 391 (1975). In this latter instance, he remains responsible for the murder.

Appellant's contention is that disunity as to time and purpose made the robbery and homicide distinct. We disagree. There was evidence that less than one minute passed from the moment appellant departed the scene to the fatal shooting. We are of the opinion that this was a negligible passage of time during the furtherance of the conspiracy; it did not represent the termination of the robbery nor appellant's abandonment of the scheme.

In *Commonwealth v. Doris*, 287 Pa. 547, 135 A. 313 (1926), one co-defendant had been detained by police officers shortly after he and his accomplices began their retreat from the robbery scene. Following the co-defendant's capture, but during the chase of accomplices, a police officer was mortally wounded. In considering the co-defendant's capture as having no effect on his culpability for murder, the *Doris* court opined:

[Doris' arrest prior to the murder] overlooks the fact that he joined in the common design, and is responsible for the acts of each naturally to be expected to occur in carrying it out. It is true that he could have abandoned the enterprise, and given sufficient time to the others to do likewise, and thus have relieved himself from liability for subsequent acts of his fellows. But he cannot escape responsibility for an act which is the probable consequence of the criminal scheme which he has helped to devise and carry forward.

*Id.*, 287 Pa. at 551–552, 135 A. at 315. Despite his capture, the *Doris* court held that the defendant did not withdraw from the scheme. No appreciable period of time passed between the conspired robbery and the resulting homicide. Consequently, the defendant was criminally liable while he remained in police custody and until the enterprise concluded.

Whether fleeing from the scene exonerates an accused from criminal acts committed by accomplices during the accused's flight was addressed in *Commonwealth v. Sampson*, 445 Pa. 558, 285 A.2d 480 (1971):

> The guilt of one engaging in an unlawful enterprise consists in part in the encouragement and support that he gives to those who commit the crime; and the influence and effect of such encouragement continue until he withdraws the encouragement by acts or words showing that he disapproves or opposes the contemplated crime. He cannot escape responsibility merely by the expedient of running away. (citation omitted).

*Id.*, 445 Pa. at 564, 285 A.2d at 483; [quoting 40 Am.Jur.2d Homicide § 40 (1968)].

■ Appellant may be correct in that the act of shooting Porter was not necessary to facilitate an escape. We agree that Porter was not attempting to impede flight. These facts, however, do not support appellant's position.

There was no evidence that appellant attempted to withdraw from the robbery. He was aware that Murray and Tate carried deadly weapons. He was also aware that Tate and Porter argued at the scene. Finally, appellant harshly instructed Colefield on several occasions to assume positions of restraint. This evidence provided the jury with sufficient basis to conclude that appellant should have known that someone could be shot during the robbery or flight. It is evident that appellant assumed the risk that a killing could occur during the crime to which he committed himself. *Commonwealth v. Batley*, 436 Pa. 377, 260 A.2d 793 (1970).

Next, appellant contends that the lower court erred in overruling his objections to the prosecutor's closing statement and in denying his request for a mistrial.[2] In explain-

2. Appellant also complains that the prosecutor incorrectly commented in closing that Gloria Oree called Loretta Turner immediately following Donald Colefield's telephone call to police. According to appellant, there was no evidence of when Gloria Oree called Loretta Turner. Appellant correctly sets forth that the prosecutor was arguing that it was impossible for appellant to perform his attested-to activities during the period following the murder until confronting Loretta Turner on the street. Irrespective of when Ms. Oree telephoned Ms. Turner, there was additional evidence as to the shortage of time supporting the inference that appellant's testimony was incredulous concerning his actions following the murder.

ing why Loretta Turner, the owner of the house on College Avenue, did not disclose in two statements to police officers that appellant confronted her on the street during his flight and gave her narcotics, the prosecutor inferred in closing argument:

She could have done that [informed police officers of her confrontation with appellant] anonymously. What was she afraid of? Afraid of Tate? Afraid of the defendant? Afraid of competing drug factions, perhaps?

(N.T., November 24, 1980, p. 32). Appellant's objection to the last inquiry was sustained on grounds that the record was bereft of evidence regarding drug factions. Appellant's motion for mistrial was denied due to the court's belief that its instruction to the jury to disregard the prosecutor's statement would prevent prejudice.

Upon resuming his closing, the prosecutor cautioned the jury as follows:

As I told you before, what I say is not evidence. It's what you hear, and you're to decide the case just on the evidence that you hear and whatever rational inferences you may draw from the evidence. Now, I say, don't leave your common sense out here when you go in there.

(N.T., November 24, 1980, p. 36). It is appellant's position that this statement was improper inasmuch as it drew the jurors' attention to the prosecutor's earlier inference that appellant was a member of a drug faction.

■ The ABA Standards Relating to the Prosecution Function control our review of a prosecutor's closing argument. The following guidelines apply: "(a) The prosecutor may argue all reasonable inferences from evidence in the record. It is unprofessional conduct for the prosecutor intentionally to misstate the evidence or mislead the jury as to the inferences it may draw. (d) The prosecutor should refrain from argument which would divert the jury from its duty to decide the case on the evidence, by injecting issues broader than the guilt or innocence of the accused under the controlling law, or by making predictions of the consequences of the jury's verdict." ABA Standards Relating to

the Prosecution Function, Section 5.8. Although the inference regarding drug factions may have been imprudent, it did not mandate a new trial. *Commonwealth v. Jarvis*, 482 Pa. 598, 394 A.2d 483 (1978); *Commonwealth v. Perkins*, 473 Pa. 116, 373 A.2d 1076 (1977). Only those remarks which replace objectivity with bias in the jurors' minds necessitate a new trial. *Commonwealth v. Baranyai*, 296 Pa.Super. 342, 442 A.2d 800 (1982). The effect of imprudent remarks depends largely upon the atmosphere at trial. *Commonwealth v. Stoltzfus*, 462 Pa. 43, 337 A.2d 873 (1975). For that reason, whether prosecutorial misconduct warrants a new trial is left to the trial court which can assess the tone of the remarks and the nonverbal reactions of the jury. *Commonwealth v. Ferguson*, 270 Pa.Super. 184, 411 A.2d 241 (1979).

■ Nothing from the record persuades us that the lower court incorrectly evaluated the effect of the remarks in denying a motion for a mistrial. We view the inference as a suggested explanation for Loretta Turner's failure to disclose her confrontation with appellant on the street. The prosecution was not interested in sullying appellant's image with inferences of illicit drug activity; it was interested in preserving Ms. Turner's credibility. Also, we are of the opinion that any prejudice was neutralized by the curative jury instruction to disregard remarks regarding competing drug factions. *Commonwealth v. Ferguson, supra.*

Appellant also takes exception to the lower court's granting of the Commonwealth's motion to amend the Bill of Information. The robbery bill was amended prior to trial to add Donald Colefield as a robbery victim. Mr. Colefield was also added on the conspiracy bill as one person whom appellant threatened with a shotgun. Appellant complains that these amendments were prejudicial; he was prepared only to defend the charge of robbery of Bruce Porter.

■ Pennsylvania Rule of Criminal Procedure 229 permits amendment of the information following its issuance:

The court may allow an information to be amended when there is a defect in form, the description of the offense, the description of any person or property, or the date charged, provided the information as amended does not charge an additional or different offense. Upon amendment the court may grant such postponement of trial or other relief as is necessary in the interests of justice.

Appellant complains that the amendments in effect brought a different offense. Additional or different offenses result where the original and amended informations involve different elements unfolding from separate factual situations. *Commonwealth v. Womack*, 307 Pa.Super. 396, 453 A.2d 642 (1982). The safeguards were placed within Rule 229 for the purpose of giving a defendant adequate preparation time for trial without risk of last-minute additions to the charges which materially alter his defense.

We conclude that appellant's defense was unaltered by the amendments; he was fully informed prior to the amendments of the criminal episode underlying both the original and amended informations. Therefore, we are in accord with those cases which upheld an amendment to the information on grounds that the defendant was not prejudiced. *Commonwealth v. Stanley*, 265 Pa.Super. 194, 401 A.2d 1166 (1979); *Commonwealth v. Lawton*, 272 Pa.Super. 40, 414 A.2d 658 (1979).

From arrest through trial, the charges remained conspiracy, robbery and murder. Although appellant was not aware until shortly before trial that Donald Colefield was an alleged robbery victim, he heard preliminary hearing testimony regarding Mr. Colefield's presence at the scene and his coerced submission to a search by appellant and Murray. The elements of the alleged crimes and the underlying factual situation were identical in the original and amended informations. Moreover, appellant has not demonstrated how the amendments substantively altered his defense. See *Commonwealth v. Womack, supra.*

Appellant also alleges that the lower court erred in admitting a composite sketch purportedly of appellant's

face and certain testimony of Officer John Calabrese of the Graphic Arts Unit of the Philadelphia Police Department. Following his interview of Donald Colefield, Officer Calabrese sketched several facial composites of the assailant. Due to the fact that none of the sketches portrayed the assailant with a beard while appellant appeared clean-shaven for trial, Officer Calabrese added a beard to one composite. Insofar as the bearded figure on one composite did not convey the description given by Colefield during the interview, appellant argues that it was improperly admitted for trial.

In returning verdicts of guilty, the jury apparently believed that appellant grew a beard subsequent to the crime for the purpose of foiling the investigation. The composite was altered only by the addition of a beard; no changes were made to the features drawn at the time of the interview. The addition of the beard was simply an experiment, which was left to the broad discretion of the trial judge. *Commonwealth v. Laniewski*, 427 Pa. 455, 235 A.2d 136 (1967). The adding or deletion of facial hair to a composite sketch is not so alarming as modifications of facial lines. Facial hair can be freely removed or grown by a suspect. Where experiments such as that employed here are not permitted, an accused could easily thwart an otherwise accurate identification.

Officer Calabrese compared his sketch with a photograph of appellant. He explained that, but for the eyes, the sketch and photograph were strikingly similar. He downplayed the dissimilar eyes by explaining that it is not unusual for a police composite to portray tense or determined eyes. (Appellant's eyes were relaxed in the photograph.) The eyewitness typically views his assailant under stressful conditions, and either his perception or the assailant himself is generally affected by the criminal episode.

It is appellant's contention that Calabrese was qualified as an expert artist, not as an expert in detecting one's mental condition. Therefore, he alleges that it was error to

admit Calabrese's testimony concerning the disparity in the eyes.

The first issue in qualifying a witness as an expert is whether the subject matter is "so distinctively related to some science, profession, business or occupation as to be beyond the ken of the average layman." *Ragan v. Steen,* 229 Pa.Super. 515, 538, 331 A.2d 724, 736 (1974) (concurring opinion). If the subject matter is of this nature, it must be determined whether the proffered witness has "sufficient skill, knowledge or experience in that field or calling as to make it appear that his opinion or inference will probably aid the trier in his search for truth." McCormick on Evidence, *supra,* at 30 (footnote omitted).

The procedure in compiling a suspect's composite sketch was a matter for expert testimony. Furthermore, the disparity between appellant's photograph and the sketch called for an explanation by an expert. The disparity is not so simple as to require only exhibiting the photograph and sketch to the jury so that they could decide whether both portray the same man. A photograph is taken of the actual subject in one setting while a composite is drawn from the recollection of an eyewitness who observed the subject in another setting. The average layman would not understand the impact that each setting would have on the final portrayal.

Also, Officer Calabrese possessed the requisite experience and knowledge to explain why a sketch and photograph of the same man would be dissimilar. Contrary to appellant's position, Calabrese was not testifying as to mental condition. As an artist of five hundred portraits over the previous five years, Calabrese understood the effect a subject's mood would have on facial expression. Calabrese was not used as an expert of the psyche; instead, he was utilized as an expert witness with sufficient knowledge of how emotion can contort one's face.

■ Appellant argues that it was error to allow Cala-brese's opinion that the sketch was "an excellent likeness" of appellant's photograph and of appellant himself. We disagree.

As an expert on facial components and the effect of emotion on those components, it remained within Cala-brese's expertise to determine whether a sketch and photograph were of the same person where both were composed in separate settings. To not have Calabrese render a final comparison of the sketch to the photograph and to appellant would leave the court and jury wondering why his earlier testimony on the effect of emotions was relevant. Emotions may affect a subject's facial expression so severely that jurors, as average laymen, may be without the skill to realize that an emotionally-ladened person portrayed in a sketch is the same person portrayed calmly in a photograph or the same person sitting passively in the courtroom.

Appellant raises several illustrations of ineffectiveness of counsel. One warrants our attention, that is: appellant's failure to object to an alleged inadequate alibi jury instruction.[3]

In addition to his defense that the conspiratorial plan terminated following his departure from the scene and prior

3. Appellant's remaining illustrations of alleged ineffectiveness do not warrant further comment due to the fact that they are without merit. Also, they do not merit remand for an evidentiary hearing. These alleged illustrations are as follows:

a) Counsel's failure to object to an erroneous jury instruction regarding appellant's credibility;

b) Counsel's failure to object to an incomplete charge on voluntary manslaughter;

c) Counsel's failure to object to an instruction that a person ordinarily intends the reasonable and probable consequences of his actions;

d) Counsel's failure to object to an instruction forbidding the jury to consider involuntary manslaughter as a possible verdict;

e) Counsel's failure to object to an improper opinion issued by an expert witness;

f) Counsel's failure to cross-examine certain prosecution witnesses concerning their prior criminal records;

g) Counsel's failure to request a jury instruction on the credibility of a witness who was intoxicated during the criminal event.

to Tate's re-entry into the home, appellant raises the alternative defense that he was not within Turner's residence at any moment during the commission of crimes for which he was charged. Instead, according to appellant, he was with his girlfriend, Sherry Crawford, at the residence of Sharon Jenkins.

Precipitated by appellant's alibi defense, the trial court instructed the jury as follows:

Now, obviously the defendant cannot be found guilty unless he was at the scene of the alleged crime.

The defendant has offered evidence to show that he was not present at the scene, but rather he was at the home of Sharon Jenkins, and spent the night there with Sherry Crawford.

You should consider this evidence along with all other evidence in the case in determining whether the Commonwealth has met its burden of proof beyond a reasonable doubt, that a crime was committed.

And that the defendant himself committed or took part in committing.

The defendant's evidence that he was not present either by itself or together with other evidence may be sufficient to raise a reasonable doubt of his guilt in your minds.

If you have a reasonable doubt of the defendant's guilt, you must find him not guilty.

(N.T., November 26, 1980, pg. 162). According to appellant, this instruction was deficient inasmuch as it did not apprise the jury that it must acquit appellant if his alibi defense raised a reasonable doubt as to his guilt. Furthermore, according to appellant, the jury was not instructed that it need not believe appellant's alibi in order to acquit. In other words, it was not explicitly charged that appellant had no burden to prove his alibi. Appellant cites *Commonwealth v. Pounds*, 490 Pa. 621, 417 A.2d 597 (1980), in support of this position.

■ We are of the opinion that *Commonwealth v. Pounds,* does not dictate a reversal and/or remand for new trial. In *Pounds,* the instructions omitted any reference to the defendant's alibi. Only boiler plate instructions concerning the presumption of innocence, the Commonwealth's burden of proving each element of the offense charged beyond a reasonable doubt, the derivation of reasonable doubt from the evidence or lack thereof, the absence of a defense burden to prove innocence, and the jury's duty to assess credibility were included. The *Pounds* court concluded that these general instructions did not guard against the possibility that the defendant's failure to prove his alibi would be construed by the jury as evidence of guilt. In ordering a new trial, the *Pounds* court said:

> The jury was not told it did not have to wholly credit Pounds' alibi testimony in order for the testimony to create a reasonable doubt of his guilt. Hence, the jury may have convicted merely because it did not believe his alibi testimony. In the absence of an instruction that they did not have to wholly believe Pounds to acquit, the jury may have inferred guilt from his failure to clearly establish his alibi.

*Id.,* 490 Pa. at 634, 417 A.2d at 603. First, we note that, unlike here, the trial court in *Pounds* included no instruction on the defendant's alibi. Secondly, we do not interpret *Pounds* as creating standard language for an alibi instruction. So long as the trial judge makes it clear that the defendant's failure to prove an alibi defense is not tantamount to guilt, the *Pounds* safeguards are preserved.

■ The lower court reminded the jury of appellant's alibi evidence. It instructed the jurors of their right to consider his alibi evidence as "sufficient to raise a reasonable doubt of his guilt," and of their duty to find appellant not guilty should the alibi evidence raise a reasonable doubt. Granted, this instruction did not explicitly warn the jury that appellant's failure to prove his alibi must not alone result in a guilty verdict. Such an instruction would unde-

niably be the better practice. Nevertheless, the references to an alibi raising a reasonable doubt and to the mandatory not guilty verdict should reasonable doubt exist, both within the context of an alibi instruction, adequately cautioned the jury that appellant's failure to prove his alibi was insufficient alone to prove guilt. The instruction here not only covered appellant's alleged alibi, but also, unlike *Pounds*, made it clear that any alibi evidence may be sufficient to create a reasonable doubt of guilt although insufficient to prove innocence. The instruction was proper; therefore, counsel was not ineffective for not objecting to it.

Judgment of sentence affirmed.

BROSKY, J., filed a dissenting opinion.

BROSKY, Judge, dissenting:

I respectfully dissent. I believe that a fair reading of *Commonwealth v. Pounds*, 490 Pa. 621, 417 A.2d 597 (1980), compels the conclusion that the trial court's alibi instruction was deficient and, thus, that counsel's failure to object to the instruction mandates a new trial.

First, I believe it is necessary to clarify appellant's contention. He does *not* contend that the instruction failed to inform the jury that it must acquit if his alibi defense raised a reasonable doubt as to his guilt. Clearly, the instruction apprised the jury of that fact. What he does argue is that the jury was not told that the alibi evidence could raise a reasonable doubt of appellant's guilt even if that evidence were not wholly believed by the jury.

The majority notes that, unlike here, the trial court in *Pounds* included no instruction on the defendant's alibi. The majority does not explain what difference this distinction makes and I find it to be a distinction without a difference. An inadequate instruction is no less error. Certainly, it would have been simple enough for *Pounds* to

have held simply that the trial court erred in failing to charge that alibi evidence could raise a reasonable doubt of the defendant's guilt. Instead, *Pounds* stated: "... the trial court failed to instruct the jury that it should acquit if Pounds' alibi evidence, *even if not wholly believed,* raised a reasonable doubt of his presence at the scene of the crime at the time of its commission and, thus, of his guilt." [1]  *Id.,* 490 Pa. at 633, 417 A.2d at 603 (footnote omitted) (citations omitted) (emphasis added).

Furthermore, I find that the majority's conclusion that while such an instruction would be the better practice, general references to an alibi raising a reasonable doubt and to the mandatory not guilty verdict should reasonable doubt exist are adequate, flies in the face of express language to the contrary in *Pounds.*

> *Where an alibi defense is presented, such an instruction is necessary* due to the danger that the failure to prove the defense will be taken by the jury as a sign of the defendant's guilt.[17]  See *United States v. Ragghianti,* 560 F.2d 1376 (9th Cir.1977); *United States v. Burse,* 531 F.2d 1151 (2d Cir.1976). See also, *Commonwealth v. Bonomo, supra,* [396 Pa. 222, 151 A.2d 441 (1959)], *Commonwealth v. Van Wright, supra,* [249 Pa.Super. 451, 378 A.2d 382 (1977)]; *United States v. Booz,* 451 F.2d 719 (3rd Cir.1971).

> General instructions on the Commonwealth's burden of proving each element of the offense beyond a reasonable doubt, the absence of a burden of proof on the defendant, and assessing the credibility of witnesses do not adequately protect against this danger. *Commonwealth v. Van Wright, supra; United States v. Burse, supra;* *Cf.*

1. I do not believe such an instruction is the equivalent of charging the jury that appellant had no burden to prove his alibi, although it is a consequence thereof. See *Pounds,* 490 Pa. at 633 n. 16, 417 A.2d at 603 n. 16. I believe it is necessary to charge the jury of this specific consequence rather than the general principle that a defendant bears no burden of proof on alibi. In any event, neither instruction was given to the jury.

*Commonwealth v. Bonomo, supra; United States v. Booz, supra; United States v. Alston,* 551 F.2d 315 (D.C.Cir.1976).

---

[17] Such an inference contravenes the presumption of innocence and the Commonwealth's burden of proving the offense beyond a reasonable doubt. See *Commonwealth v. Bonomo, supra; United States v. Ragghianti,* 560 F.2d 1376 (9th Cir.1977).

*Id.* (emphasis added).

Instructing a jury only that an alibi defense can raise a reasonable doubt and that it must find a defendant not guilty should it find such reasonable doubt, still leaves open the possibility that the jury will not have that reasonable doubt because it did not wholly believe the alibi testimony and drew an improper inference of guilt from its partial disbelief. Thus, I must conclude that, as in *Pounds,* the jury in the instant case, in the absence of an instruction that it did not have to wholly believe appellant to acquit, may have inferred guilt from appellant's failure to establish his alibi.

I find, therefore, that an objection to the trial court's alibi instruction would have been of arguable merit. Moreover, I believe that counsel's failure to object could have had no reasonable basis. Thus, trial counsel was ineffective and I would vacate the judgment of sentence and remand for a new trial.[2]

**2.** Even if appellant were not entitled to a new trial, I would find that he is entitled to an evidentiary hearing on the issue of the testimony of the Commonwealth's expert artist. I find that the claim that counsel should have objected to the expert's testimony that the sketch "bore an excellent likeness" to appellant is of arguable merit. Expert testimony is admissible "when it involves explanations and inferences not within the range of ordinary training, knowledge, intelligence and experience." *Commonwealth v. Nasuti,* 385 Pa. 436, 443, 123 A.2d 435, 438 (1956). However, expert testimony is not admissible if the issue involves a matter of common knowledge. *Commonwealth v. O'Searo,* 466 Pa. 224, 352 A.2d 30 (1976). Instantly, once the expert had explained to the jury the effect that emotions can have on facial expressions, I believe that it was well within the jury's capability to determine whether the sketch resembled appellant. Therefore, I would remand this case for an evidentiary hearing to determine whether counsel had a reasonable basis for failing to object to this testimony.