## Commonwealth v. Gonzales

*Charles Junod, assistant district attorney,* for the commonwealth.

*Nazario Jiminez,* for defendant.

HERRON, *J.,* June 1, 1988 — Defendant was convicted on January 21, 1988 of cruelty to animals by the Honorable John W. Herron sitting without a jury (Bill of Information no. 8707-0589).[1] He was sentenced on March 21, 1988 to one year non-reporting probation.

---

1. 18 Pa. C.S., §5511, relating to cruelty to animals, reads as follows:

"(h.1) *Animal fighting* — A person commits a felony of the third degree if he:

"(1) for amusement of gain, causes, allows or permits any animal to engage in animal fighting;

"(2) receives compensation for the admission of another person to any place kept or used for animal fighting;

"(3) owns, possesses, keeps, trains, promotes, purchases or knowingly sells any animal for animal fighting;

"(4) in any way knowingly encourages, aids or assists therein;

"(5) wagers on the outcome of an animal fight;

Prior to trial, defendant filed a motion to suppress physical evidence. That motion was heard and denied by the Honorable Lawrence Prattis on October 7, 1987.

Defendant filed post-trial motions and now appeals from the denial of the suppression motion and the judgment of sentence, raising five issues: (1) the evidence was insufficient to support the conviction; (2) the statute, Cruelty to Animals — Animal Fighting, 18 Pa.C.S. §5511(h.1), is unconstitutional; (3) the court erred in admitting the amendment of the bills of indictment; (4) the court erred in admitting opinion evidence; and (5) the suppression court erred in not granting the motion to suppress physical evidence. These claims are without merit.

## SUFFICIENCY OF THE EVIDENCE

The credible evidence at trial established that on April 26, 1987 at approximately 6:30 a.m., Police Officer Lawrence Boston responded to a police radio call of a burglary in progress at 3847 North Franklin Street in Philadelphia. The officer, accompanied by his partner, Lisa Marshall, went immediately to that property, but found no evidence of anyone breaking in. As he was returning to his patrol car, however, he heard a rooster crowing in the basement of the row house. He walked back toward the house and looked in through a barred basement window.

From outside, Officer Boston observed defendant and another man, facing each other, both holding roosters. As the officer watched, defendant and the other man pushed the birds toward each other, forc-

---

"(6) pays for admission to an animal fight or attends an animal fight as a spectator; or,

"(7) knowingly permits any place under his control or possession to be kept or used for animal fighting."

ing their heads together. Boston testified that they did this several times. In the background, the officer saw cages and a ring. The ring was filled with sawdust and contained milk crates.

The police officer and his partner then went around to the front porch which was completely barred with one-quarter inch steel dowels. The officers shook the gate and defendant and the other man, later identified as his brother, came out on to the porch. Officer Boston, who was in uniform, called for backup, and a tow truck. He also called the S P C A to have an agent sent.

Approximately an hour later, the S P C A agent and a tow truck arrived. Defendant and his brother then admitted the police and S P C A agents. Defendant and his brother were placed under arrest. In the basement of the house, police and S P C A agents found four roosters in separate cages and a pit or ring. They also found in a cabinet vitamins, ointments, oils, pills, pain killers and syringes. The roosters had their breast feathers shaved, their wattles and combs cut, and some had their spurs honed down.

The commonwealth called S P C A agent Gary Lovett to testify to the practices and terminology of cockfighting. He explained that the practice of holding roosters and pushing their heads together is called "baiting" and is used to tease or goad the birds into fighting.

He also testified that the vitamins, oils, syringes, pills and pain killers which he observed on the premises are commonly used in conjunction with cockfighting. Lovett observed that the roosters he saw were separately caged and were "dressed" as birds are for fighting, with their wattles and combs cut, their breast feathers shaved, and their spurs

were used for cockfighting based on the pit, the type of cages, and the medicines which were present.

Defendant took the stand and denied doing what Officer Boston testified he observed. He admitted that he and his brother were holding roosters at 6:30 a.m. on the day in question, but insisted they never had the birds facing each other and never moved the birds toward each other. He testified that he had never seen a cockfight and did not know why the birds were trimmed as they were. He said that his brother kept the birds because he liked to hear them sing. The court disbelieved defendant's testimony.

Defendant challenges the sufficiency of the evidence to sustain defendant's conviction. In assessing its sufficiency, the evidence must be viewed in the light most favorable to the commonwealth, as the verdict winner, giving the commonwealth the benefit of all reasonable inferences that can be drawn therefrom. *Commonwealth v. Waller*, 498 Pa. 33, 43, 444 A.2d 653, 658 (1982). Viewed in this light, the evidence is more than sufficient.

In post-verdict motions, defendant claimed that the court improperly "presumed or inferred" solely from the appearance of the roosters that they were possessed for fighting. This characterization of the court's thought process is inaccurate. The evidence established that Officer Boston observed defendant actually engaging in cockfighting, as defined in the statute. Specifically, Officer Boston stated that he saw defendant and his brother each holding a rooster. He said that they were holding the roosters facing each other and pushed them toward each other forcing their heads together. He said that he watched them do this several times. S P C A agent Lovett testified that these actions constituted a

cockfighting practice called baiting. The statute specifically defines animal fighting as "fighting or baiting any bull, bear, dog, cock or other creature." 18 Pa.C.S. §5511(g). There was, therefore, direct evidence of cockfighting in progress and the court did not need to infer that the birds were kept for fighting.

There was, in any case, ample evidence to infer that the birds were being used for fighting. In addition to the birds being dressed for fighting, with their feathers shaved, wattles and combs cut, and spurs honed, the police and S P C A agents found medicines commonly used in cockfighting and saw a fighting pit in the house where defendant lived with his brother.

The credible evidence was sufficient to convict defendant under at least three different subsections of the animal fighting statute. It established that defendant:

(1) For amusement or gain, caused, allowed or permitted an animal to engage in animal fighting;

(3) Owned, possessed, kept or trained an animal for animal fighting; and

(4) In any way knowingly encouraged, aided or assisted therein.

Defendant challenges the constitutionality of the animal fighting statute claiming that it is vague, overbroad and that it calls for a cruel and unusual punishment. None of defendant's claims, however, address the statute as applied, but rather raise hypothetical situations in which the statute might be unclear. This is not the proper posture for determining the constitutionality of the statute. As applied to the facts of this case, the statute is clear and defendant's probationary sentence is certainly not cruel

and unusual; defendant has no standing to challenge the statute based on hypothetical facts.

Absent an assertion of First Amendment freedoms[2], the specificity of a statute must be measured against the conduct of the party challenging the statute. *Commonwealth v. Lewis*, 307 Pa. Super. 468, 453 A.2d 982 (1982); *Commonwealth v. Heinbaugh*, 467 Pa. 1, 354 A.2d 244 (1976). In this case, defendant was observed with his brother baiting two cocks.

In determining whether the statute, as applied, is unconstitutionally vague, this court must decide whether the statute gives reasonable notice that the conduct engaged in by defendant is proscribed. The requirements of due process are satisfied if the statute in question gives *reasonable* standards to guide prospective conduct and a "violator whose conduct falls clearly within the scope of such standard has no standing to complain of vagueness." *Commonwealth v. Lewis*, 307 Pa. at 472, 453 A.2d at 985.

The statute here clearly proscribes causing, allowing or permitting any animal to engage in animal fighting; owning, possessing, keeping or training any animal for animal fighting; or in any way knowingly encouraging, aiding, or assisting in the above. 18 Pa.C.S. §5511(h.1). "Animal fighting," moreover, is clearly defined as: "Fighting or baiting any bull, bear, dog, cock or other creature." The statute clearly proscribes defendant's conduct — the actual baiting of two cocks.

Despite its clear application to his own conduct, defendant argues that the statute is vague and

2. Defendant does not make any showing how any First Amendment rights of his have been infringed.

overbroad because: (1) one can be convicted of mere possession of a fighting animal[3]; (2) the statute does not explicitly state what the required culpable mental state is for all subsections of the statute,[4] (3) the subsection prohibiting paying for admission to a cockfight is not clear as to time; (4) one might be convicted even if one never fights the birds in Pennsylvania; (5) a landlord might be held liable; (6) a lawyer representing cockfighters might be held liable for aiding or abetting. Defendant has no standing to raise these claims since they are not involved in his case.

Defendant also asks this court to take judicial notice of the difference between "American" and "Hispanic" cocks and find that section 5511 (h.1) is discriminatory based on this difference in physical appearance. This court does not know the difference between Hispanic and American roosters and cannot, therefore, base any kind of legal conclusion on such knowledge. Defendant provides no support for his claim that the statute is discriminatory and nothing in the statute itself encourages arbitrary or discriminatory enforcement.

---

3. The Commonwealth Court has held that section 5511 does not prohibit mere ownership of game fowl. See *Pennsylvania Game Fowl Breeders Association v. Commonwealth*, ____ Pa. Commw. ____, 533 A.2d 838, 840 (1987).

4. To the extent that this issue is relevant to defendant's case, it is answered by statute. 18 Pa. C. S. §302(c) provides that "when the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly, or recklessly with respect thereto." In any event, the court found that defendant knowingly and intentionally aided in and participated in cockfighting.

## AMENDMENT OF INFORMATION

After defendant waived arraignment and pled not guilty to the charges, defense counsel asked the commonwealth to specify which charges it was proceeding on. At that time, the commonwealth discovered that the information alleged the wrong subsection of the animal cruelty statute. Instead of alleging the defendant violated section 5511 (h.1) animal fighting, it alleged a violation of section 5511 (a). The commonwealth then asked to amend the information to comport with the crime charged in the complaint and proven at the preliminary hearing.

Defense counsel objected to the amendment, but conceded that defendant was not prejudiced. The court allowed the amendment and then asked the defense if it needed a continuance in light of the amendment. Defense counsel declined the offer and announced that he was ready to proceed.

Defendant now claims that the court erred in allowing the amendment of the information. The appellate courts look at two factors in determing whether lower courts have erred in allowing amendments of informations: (1) whether the defendant had adequate notice of the charges against him; and (2) whether he is prejudiced by the amendment. *Commonwealth v. Womack,* 307 Pa. Super. 396, 453 A.2d 642 (1982); *Commonwealth v. Lawton,* 272 Pa. Super. 40, 414 A.2d 658 (1979); *Commonwealth v. Stanley,* 265 Pa. Super. 194, 212, 401 A.2d 1166, 1175 (1979) ("The purpose of rule 229 is to insure that a defendant is fully apprised of the charges against him, and to avoid prejudice [arising from] the last minute addition of alleged criminal acts of which the defendant is uninformed.")

Thus, when defendants have been informed through the original complaint and at the prelimi-

nary hearing of the correct charges against them, the courts have held that informations may properly be amended. *Commonwealth v. Lawton, supra* (amendment adding the charge of aggravated assault, when only simple assault was originally alleged in the information was proper); *Commonwealth v. Womack, supra* (amendment adding the charge of conspiracy held proper). Such amendments have been permitted even when they change the grade of the offense, as in *Lawton,* or charge completely new crime, as in *Womack.* See also, *Commonwealth v. Jones,* 319 Pa. Super. 570, 466 A.2d 691 (1983) (amendment changing grade from misdemeanor of the third degree to felony of the third degree was properly permitted).

Defendant here was properly charged with animal fighting in the complaint. He was again made aware of the charges against him both at the preliminary hearing and the motion to suppress. Most importantly, he conceded that he was not prejudiced and declined the court's offer of a continuance in light of the amendment. In these circumstances, it was proper to allow the amendment.

## TESTIMONY OF S P C A EXPERT

Defendant argued at trial and verdict motions that it was error to allow S P C A agent Gary Lovett to testify, based on the appearance of the birds, the presence of the pit, the cages and the medications and ointments, that it was his opinion that the cocks found in the basement of defendant's residence were used "for fighting." Further, he claimed that because Lovett was not an expert, he could not give an opinion based on what someone else — Police Officer Boston — observed. Both claims are without merit.

Opinion evidence is admissible whenever the subject matter is distinctly related to a science, skill, profession, business of occupation as to be beyond the knowledge or experience of the average layman. *Commonwealth v. Johnson,* 358 Pa. Super. 435, 517 A.2d 1311 (1986); *Commonwealth v. Johnson,* 336 Pa. Super. 1, 485 A.2d 397 (1984). In these circumstances, a qualified expert may express an opinion even on the ultimate issue before the factfinder. *Commonwealth v. Johnson,* 358 Pa. Super. 435, 517 A.2d 1311 (1986); *Commonwealth v. Daniels,* 480 Pa. 340, 390 A.2d 172 (1978). The determination of whether a witness possesses the required qualifications is a matter left to the sound discretion of the trial court and will be reversed only for a clear abuse of discretion. *Commonwealth v. Bennett,* 471 Pa. 419, 370 A.2d 373 (1977).

The subject matter in this case called for expertise beyond the knowledge of the common layman. How fighting birds are dressed, what paraphernalia is associated with and used for cockfighting, and what happens before and during an actual cockfight are not common knowledge to most laymen. Someone with specialized knowledge of cockfighting practices was necessary in this case to explain the significance of the items found in defendant's residence, the peculiar grooming of the birds, and the actions observed by Police Officer Boston.

The opinion expressed by S P C A agent Lovett that the birds were used for fighting is indistinguishable from opinions by police officers with narcotics training that drugs are possessed with intent to deliver. In drug cases, experts are permitted to testify, based on amounts of drugs or the presence of drug paraphernalia, that the drugs are possessed with the intent to deliver. See *Commonwealth v. Johnson,* 358 Pa. Super. 435, 517 A.2d 1311 (1986);

*Commonwealth v. Bagley,* 296 Pa. Super. 43, 442 A.2d 287 (1982). In this case, Lovett testified that, based on the dressing of the birds with feathers shaved, combs and wattles cut, and spurs honed down, the medications, ointments, and syringes found in the house, the pit, and the manner in which the birds were caged, it was his opinion that the birds were used for fighting. That is proper opinion testimony.[5]

The court found Lovett to be qualified as an expert in the area of cockfighting. "A witness who has any reasonable basis of special knowledge on a subject may testify." *Commonwealth v. Owens,* 321 Pa. Super. 122, 467 A.2d 157 (1983). Lovett certainly met this standard. He had worked for seven and a half years investigating cruelty to animals for the S P C A. He participated in several seminars on animal cruelty, specifically seven or eight cockfighting seminars, two lasting a week to 10 days. In these courses, he observed films and read literature on preparing the birds for fighting, the appearance of the birds, and the procedures of fighting, including before, during and after the fight. The agent had investigated cockfighting 20 to 40 times and participated in four arrests. The court considered this background to be a reasonable analysis of special knowledge.

Once it was determined that Lovett was an expert, he was properly permitted to give an opinion based on a hypothetical question describing events observed by Police Officer Boston and already in evi-

---

5. In any case, Lovett also testified that the actions observed by Police Officer Boston constituted the cockfighting practice of baiting. Since animal fighting is expressly defined to encompass baiting, Lovett's opinion of what the birds were used for was unnecessary. There was direct evidence that defendant was observed fighting the birds.

dence. *Commonwealth v. Paskings,* 447 Pa. 350, 290 A.2d 82 (1972).

## SUPPRESSION MOTION

Defendant argued on post-verdict motions that Judge Prattis erred in denying his motion to suppress physical evidence on the ground that defendant's warrantless arrest was illegal. Judge Prattis properly concluded that the warrantless arrest of defendant and search of his residence were proper in light of Police Officer Boston's personal observation of a felony in progress and his well supported belief that evidence was being destroyed.

At the hearing on motion to suppress, as at trial, Police Officer Boston testified that at approximately 6:40 a. m., he received a radio call of a burglary in progress at 3847 North Franklin Street. Upon arriving at that location, the officer investigated but found no evidence of a break-in. As he turned to return to his car, however, he heard chickens making noise in the basement of the house.

The officer then looked into the basement window and observed defendant and another man holding two roosters, pushing them toward each other, baiting and agitating the birds. Observing this crime in progress, Police Officer Boston rattled the bars of the house to gain admittance. After three to four minutes, defendant and the other man came to the porch, but refused to let the officer in.

Police Officer Boston then called for his supervisor. While waiting for the supervisor to come, the officer smelled something burning and saw smoke in the house. Boston's sergeant arrived about ten to fifteen minutes after he was called. Again, the police were denied entry.

Officer Boston remained at the house while his sergeant went to get help and the S P C A agents.

At approximately 8 a.m., a police tow truck arrived, along with S P C A agent Lovett. Faced with the police tow truck prepared to pull down the bars from the porch, defendant and the other men let the police and S P C A agent in.

Defendant and his brother were placed under arrest. In the living room, when they entered, police found medical equipment. The police and S P C A agents then proceeded to the basement where Officer Boston had seen the two birds fighting. There they found and seized four caged cocks and some equipment. The officer also found some materials which had been set on fire.

Judge Prattis properly concluded that there were exigent circumstances to justify a warrantless arrest and search in this case. Police Officer Boston personally observed defendant and his brother engaged in animal fighting, a third degree felony. He then moved to arrest the men as quickly as he could in light of the bars surrounding the house. He called for backup immediately and then began to smell burning and see smoke inside the house. When backup came, they moved to gain entry to the house as quickly as possible without taking time to get a warrant. This action proved justified because the officers did find burned materials in the house. Such destruction of evidence is precisely the type of exigent circumstances which justifies a warrantless entry and search. *Commonwealth v. Maxwell*, 505 Pa. 152, 477 A.2d 1309, cert. denied 496 U.S. 971, 1055 et. 370, (1984). (Warrantless searches permitted "when there is some affirmative indication to support a belief that evidence is being destroyed").